## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| LAWRENCE MADISON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV424-029 |
| | ) | |
| SHAWN GILLIS and TYRONE | ) | |
| OLIVER, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER, REPORT, AND RECOMMENDATION

Petitioner Lawrence Madison filed his Petition for Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254 on January 9, 2024,[1] seeking relief

from his 2012 Chatham County Georgia conviction. *See* doc. 1 at 19. The

Court directed the Respondent to respond and directed Madison to reply

to Respondent's response within 30 days from the date the pleading was

served. *See* doc. 2 at 2. Respondent filed an Answer, arguing that the

Petition should be denied. Doc. 8; *see also* doc. 8-1 (Brief). Pursuant to

---

[1] Madison's Petition was signed and dated January 9, 2024, and it was filed on the docket on February 6, 2024. *See* doc. 1 at 13; *see generally id.* Pursuant to the prisoner mailbox rule, his Petition is considered filed on the date which he delivered it to the prison authorities for mailing, which the Court presumes is the date it was signed. *Taylor v. Williams*, 528 F.3d 847, 849 n.3 (11th Cir. 2008).

the Court's prior Order, Madison's reply to that response was due by May 9, 2024. *See* doc. 2 at 2. Madison moved for leave to serve discovery on Respondent, doc. 10, and for leave to amend his Petition to correct several clerical or typographical errors, doc. 11. Madison's request to serve discovery was denied, but his Motion to Amend was granted.[2] Doc. 13. He filed his Reply brief, doc. 15, and this Petition is ripe for review.

## Background and Procedural History

In 2006, Whitney Madison, the victim and Petitioner's adopted daughter, claimed that Petitioner molested her. On October 16, 2006, a detective, Michael Uritescu interviewed the victim and sent an investigative report to Greg McConnell, a Chatham County Assistant District Attorney ("ADA"). Doc. 9-10 at 337-43. However, at that time, the grand jury returned a "no bill," concluding that insufficient evidence existed to charge Petitioner with a crime in connection with the 2006 incident. *Madison v. State*, 766 S.E.2d 206, 210 (2014); *see also* doc. 9-10 at 343. In 2009, the victim again accused Petitioner of inappropriate conduct occurring at his law office. By this time, the victim was 18 years

---

[2] Madison did not file an Amended Petition but apparently infers, erroneously, the Court will incorporate by reference his corrections, notated in his "Errata Request." Doc. 11. Therefore, despite the Court's Order allowing amendment, the operative petition is the originally filed Petition, doc. 1.

old and alleged she had been assaulted while working for Petitioner. The victim video-recorded the in-office encounters and then reported Petitioner to the police. *Madison*, 766 S.E.2d at 209-211, 213; Doc. 9-10 at 344-46. Detective Uritescu, who took her statement, urged her to record phone calls with the Petitioner to discuss "anything that may have happened." Doc. 9-10 at 348. The victim recorded several conversations between herself and the Petitioner and between herself and her mother.

On November 4, 2009, the Chatham County grand jury indicted Petitioner for child molestation (counts 1, 2, and 3), relevant to the 2006 encounter, as well as sexual battery (counts 4 and 5); public indecency (count 6); and aggravated sexual battery (count 7), relevant to the 2009 encounters. Doc. 9-7 at 65-67. Petitioner was represented at trial by Michael Schiavone after the incapacitation and subsequent death of Petitioner's original attorney, Terry Jackson, in March of 2012. *See* doc. 9-12 at 92; *see also* doc. 9-13 at 2. Beginning in January 2012, Petitioner, a licensed attorney, served as co-counsel. Doc. 9-13 at 7; *see also* doc. 9-8 at 531. Petitioner continued to serve as his own co-counsel during trial. Doc. 9-13 at 4.

During pretrial proceedings the trial court suppressed the victim's video recording of Petitioner's 2009 conduct. Doc. 9-7 at 155-57. However, during trial, jailhouse informant Alfonso Habersham referenced the existence of the recording during his testimony. Doc. 9-11 at 26. The trial judge gave a curative instruction to the jury, asking them to "disregard [the informant's] statement entirely concerning any video," unintentionally exposing to the jury the existence of a video. *Id.* at 27-28. After the instruction, Schiavone's request for a mistrial was denied. *Id.* at 28.

At trial, the State dismissed count 1; the court granted Petitioner's motion for directed verdict on counts 2 and 6; and the jury found Petitioner guilty on all remaining counts. Doc. 9-7 at 58; *see also* doc. 9-11 at 219. The court sentenced Petitioner to 25 years followed by life on probation for aggravated sexual battery (count 7); 20 years consecutive for child molestation (count 3); and 12 months concurrent for sexual battery (counts 4-5). Doc. 9-7 at 58.

While trial counsel filed a rudimentary Motion for New Trial, *see* doc. 9-8 at 93-94, appellate counsel Scott Key filed a robust Motion for New Trial, *see* doc. 9-8 at 46-78, and represented Petitioner at the hearing

on the Motion on August 5, 2013.  *See* docs. 9-6 at 31; 9-11 at 228-344.

The motion was denied.  Doc. 9-7 at 30-52.  On direct appeal, Petitioner,

through counsel Key, enumerated six errors, *see* doc. 9-12 at 18,

paraphrased as:

1. Trial court error in refusing to grant a mistrial after the jailhouse informant referenced a [suppressed] recording and after the lower court's curative instruction confirmed that it was a video recording.
2. Trial court error in instructing the jury on inferences regarding lack of consent based on familial relationships.
3. Trial court error in refusing to sever the 2006 child molestation count from the remainder of the counts in the indictment.
4. Ineffective assistance of trial counsel in that trial counsel:
   a. failed to move to redact portions of recorded phone calls between the victim and Petitioner;
   b. failed to call Matthew Madison, the victim's brother, after promising to do so in opening statements;
   c. failed to object to victim impact evidence and future dangerousness evidence from the victim;
   d. failed to move for a mistrial after the victim made references to the suppressed video;
   e. failed to move for mistrial when the state commented on Petitioner not testifying; and
   f. eliciting testimony from Petitioner's wife that Petitioner had been in solitary confinement for 13 months.
5. Trial court error in failure to grant directed verdict of acquittal.
6. Trial court error in its failure to charge the jury on its request to charge numbers 15, 16, 17, 20, and 21.

*Id.*; *see also id.* at 35-49.  The Georgia Court of Appeals reversed

Petitioner's convictions for sexual battery and aggravated sexual battery

upon its finding that the trial court committed reversible error in a portion of its charge to the jury. *Madison*, 766 S.E.2d at 215-16. It explained, "the trial court's charge that '[f]orce may be inferred as evidence of intimidation arising from the familial relationship,' . . . could have confused the jury and resulted in a finding of intimidation based upon the existence of the familial relationship alone." *Id*. at 215. The appellate court rejected his other allegations of error and remanded the case. *See generally id.*

The State moved to place the reversed sexual battery counts and aggravated sexual battery count on the dead docket and eventually moved to *nolle prosse* them. Doc. 9-7 at 24, 28. The trial court resentenced Petitioner to 20 years on his remaining conviction for child molestation. Doc. 9-7 at 4. Meanwhile, Petitioner filed his state habeas petition in Tattnall County Superior Court in June of 2017, raising nine ineffective assistance grounds, doc. 9-3:

1. Appellate counsel rendered ineffective assistance when he did not challenge the lack of a *Faretta* hearing in the motion for new trial or on appeal.
2. Trial counsel rendered ineffective assistance when he failed to move for a continuance under the governing statute providing for a continuance in cases of "providential cause," and appellate counsel rendered ineffective

assistance when he failed to challenge the denial of a continuance on direct appeal.

3. Trial counsel rendered ineffective assistance when he failed to engage an expert witness to show that the victim's behavior was inconsistent with child molestation, and new trial/appellate counsel was ineffective for failing to raise the issue.

4. Trial counsel rendered ineffective assistance when he failed to invoke the marital privilege on Madison's behalf when the state questioned Madison's wife about confidential communications made by Madison in reliance on the marital relationship.

5. Trial counsel rendered ineffective assistance of counsel when he failed to object to unredacted portions of the recorded phone calls between the victim and Madison.

6. Trial counsel rendered ineffective assistance in violation of the Sixth Amendment of the United States Constitution, for failing to conduct any investigation regarding relevant witnesses that could have debunked the victim's claims.

7. Trial counsel rendered ineffective assistance of counsel for failing to object to the audio recording between the victim and her mother, Andrea Madison, that was inadmissible hearsay, irrelevant and unduly prejudicial.

8. Trial counsel rendered ineffective assistance in his cross-examination of the victim.

9. Trial counsel rendered ineffective assistance of counsel for failing to object to the testimony of Alfonso Habersham, the jailhouse informant, and he was ineffective in his cross-examination of Habersham.

Doc. 9-3 at 9-10. The state habeas court held a hearing on March 28, 2019, doc. 9-6, and denied relief on October 14, 2022, doc. 9-13. Petitioner then applied to the Georgia Supreme Court for a certificate of probable

cause to appeal the state habeas court's ruling, which the Georgia Supreme Court denied. *See* docs. 9-14; 9-15.

Petitioner timely executed his federal Petition raising 12 grounds for relief challenging his convictions. Doc. 1. Petitioner asserts in his present Petition the following grounds for relief:

1. Appellate counsel was ineffective when he filed the Motion for New Trial and on appeal for failing to challenge the trial court's failure to give Petitioner a Faretta hearing prior to allowing him to enter as co-counsel at trial.
2. Trial counsel was ineffective for failing to move for a continuance pursuant to the "providential cause" statute under Georgia law, and that appellate counsel was ineffective when he failed to challenge the denial of a continuance on direct appeal.
3. Trial counsel was ineffective when he failed to coordinate and present a paid expert witness to testify as to the victim's behavior, and appellate counsel was ineffective for failing to raise the issue on appeal or in the motion for new trial.
4. Trial counsel was ineffective for failing to conduct any investigation regarding relevant witnesses who could have "debunked" the victim's claims.
5. Trial counsel was ineffective for failing to invoke the marital privilege on Petitioner's behalf when the State questioned Madison's wife about confidential communications made by Madison in reliance upon the marital relationship.
6. Trial counsel was ineffective when he failed to object to unredacted portions of the recorded phone calls between the victim and Petitioner.
7. Trial counsel was ineffective when he failed to object to an audio recording between the victim and her mother, the Petitioner's wife, Andrea Madison, which constituted

        inadmissible hearsay, was irrelevant, and unduly prejudicial.

8.    Trial counsel was ineffective in his cross-examination of the victim.

9.    Trial counsel was ineffective when he failed to object to the testimony of a jailhouse informant, Alfonso Habersham, and was ineffective in his cross-examination of Habersham.

10.   Trial Court error, articulated in the Petition as: "Materially False Testimony/Evidence, Prosecutorial Misconduct, and 14th Amendment & 5th Amendment Due Process and Fair Trial and *Brady v. Maryland* Violations.

11.   Trial Court error, articulated in the Petition as: Objectively Unreasonable Jury Instructions, fair trial, and due process violations.

12.   Cumulative Error.

Doc. 1 at 34-35. Commissioner Oliver moved to intervene as a party Respondent and the Court granted the Motion. Docs. 5; 7. Respondent filed his Brief, asserting that this Court should attribute deference to the state courts' decisions on Grounds 1, 2, 3, and 11. Doc. 8-1 at 4-18, 25-28. Respondent argues Grounds 4, 5, 6, 7, 8, and 9 were found by the state habeas court to be procedurally defaulted and thus asks the Court to defer to that holding. *Id.* at 18-20. Respondent argues that Grounds 10 and 12 are unexhausted and therefore should be denied under the "successive petition rule." *Id.* at 21-24, 28. Petitioner replied, generally arguing that the state courts were wrong. *See, e.g.*, doc. 15 at 6 ("Trial courts and state habeas triers have been getting *Faretta* wrong for nigh

on 50 years now.")  In the meantime, the Court also denied Petitioner's

Motion for Discovery.  Doc. 13.

## Legal Standard

The Antiterrorism and Effective Death Penalty Act ("AEDPA")

provides "[a] general framework of substantial deference [for] our review

of every issue that the state courts have decided" on the merits.  *Diaz v.*

*Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1141 (11th Cir. 2005).  Under

that Act, a federal court shall not grant habeas relief on any claim

"adjudicated on the merits" in state court unless the state court's decision

denying relief was either "contrary to, or involved an unreasonable

application of, clearly established [f]ederal law, as determined by the

Supreme Court of the United States," or "resulted in a decision that was

based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."    28 U.S.C.

§ 2254(d)(1)-(2).

For purposes of § 2254(d)(1), the phrase "clearly established federal

law" refers only "to the holdings, as opposed to the dicta, of [the Supreme]

Court's decisions as of the time of the relevant state-court decision."

*Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams*

*v. Taylor*, 529 U.S. 362, 412 (2000) (internal quotations omitted)). The decision of a state court is "contrary to" clearly established federal law when the state court "applied a rule in contradiction to governing Supreme Court case law" or "arrived at a result divergent from Supreme Court precedent despite materially indistinguishable facts." *Dill v. Allen*, 488 F.3d 1344, 1353 (11th Cir. 2007). And a state court's application of federal law is unreasonable "only if no 'fairminded jurist' could agree with the state court's determination or conclusion." *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *see also Harrington*, 562 U.S. at 101 ("[A]n unreasonable application of federal law is different from an incorrect application of federal law." (internal citation, quotation and emphasis omitted)). Here, "[t]he key word is 'unreasonable,' which is more than simply incorrect." *Sealey v. Warden, Ga. Diagnostic Prison*, 954 F.3d 1338, 1354 (11th Cir. 2020). To meet this standard, "a prisoner must show far more than that the state court's decision was merely wrong or even clear error." *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025,

1034 (11th Cir. 2022) (quoting *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (internal quotations omitted)).

Under § 2254(d)(2), courts also must defer to a state court's determination of the facts unless the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Section 2254(d)(2) works much like § 2254(d)(1) in that it requires federal courts to give state courts "substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015).  "We may not characterize . . . state-court factual determinations as unreasonable 'merely because we would have reached a different conclusion in the first instance.'" *Id.* at 313-14 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)) (alteration adopted).  District courts presume that the state court's factual determinations are correct, absent clear and convincing evidence to the contrary. *Pye*, 50 F.4th at 1035; 28 U.S.C. § 2254(e)(1).  In sum, AEDPA sets "a difficult to meet, [cit.], and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted).

Additionally, "when a state court on direct review has determined that the alleged constitutional error was harmless," a habeas petition cannot be successful unless it satisfies both AEDPA and *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012); s*ee also Brown v. Davenport*, 596 U.S. 118, 122 (2022) ("When a state court has ruled on the merits of a state prisoner's claim, a federal court cannot grant relief without first applying both the test this Court outlined in *Brecht* and the one Congress prescribed in AEDPA."). That means, in addition to the difficult and highly deferential standard articulated above, the Petitioner must also show that the alleged constitutional error "had a 'substantial and injurious effect or influence' on the outcome of his trial." *Brown*, 596 U.S. at 126 (quoting *Brecht*, 507 U.S. at 637). Thus, even if Petitioner meets his burden to show there has been a constitutional error, the question turns on whether that error resulted in "actual prejudice." *Brecht*, 507 U.S. at 637 (*quoting United States v. Lane*, 474 U.S. 438, 449 (1986)).

A critical prerequisite for any state petitioner seeking federal habeas relief is the requirement that he first properly raise the federal constitutional claim in the state courts. *See* 28 U.S.C. § 2254(b). "The

exhaustion requirement springs from principles of comity, which protect

the state court's role in the enforcement of federal law and prevent

disruption of state court proceedings." *Ward v. Hall*, 592 F.3d 1144, 1156

(11th Cir. 2010) (citing *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).  The

statute provides that:

> (b)(1) An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in
> > the courts of the State; or
> > (B)(i) there is an absence of available State corrective
> > process; or
> > (ii) circumstances exist that render such process
> > ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied
> on the merits, notwithstanding the failure of the applicant to
> exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion
> requirement or be estopped from reliance upon the
> requirement unless the State, through counsel, expressly
> waives the requirement.

28 U.S.C. § 2254(b).  To exhaust state remedies, a petitioner must fairly

present every issue raised in his federal petition to the state's highest

court, either on direct appeal or on collateral review.  *Ward*, 592 F.3d at

1156 (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A claim is procedurally defaulted if the petitioner failed to exhaust his state remedies, and the court to which he would have to present his claims in order to satisfy the exhaustion requirement would find the claims procedurally barred. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998). The doctrine of procedural default also dictates that "[a] state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).

Even if the state court never had an opportunity to review the claim and it is thereby procedurally defaulted at federal habeas, a petitioner may obtain federal review of that claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977). To show cause, the petitioner must demonstrate "some objective factor external to the defense" that impeded his effort to raise the claim properly in state court. *Murray*, 477 U.S. at 488. Once cause

15

is established, the petitioner also must show actual prejudice from the alleged constitutional violation. *See Sykes,* 433 U.S. at 84. To show prejudice, a petitioner must demonstrate that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992). A federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray*, 477 U.S. at 495-96. A "fundamental miscarriage of justice" occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. *Id*.

## Discussion

### I.    Petitioner's Request to Expand the Record, i.e., "Notices," Construed as Motions to Expand the Record, Are Denied.

Before the Court moves to Petitioner's substantive claims, the Court takes up two documents filed by Petitioner seeking to "Correct the Trial Transcript." *See* docs. 17, 20. One of these filings was sent to the Court enclosed in a letter to the undersigned, with the Motion enclosed, *see* doc. 17. The cover letter notes that the "Motion to Correct the Trial Transcript; Request for Errata Sheet from Court Reporter" which was

"filed with the Superior Court of Chatham County" was enclosed in the letter. *Id.* Thus, it is unclear whether Petitioner directs his request at this Court, seeking to have the undersigned order the Superior Court of Chatham County to comply, or if he is merely providing the Court with notice of his request which was made to the Superior Court by enclosing it within a letter to the Court. The other document is duplicative, but it was docketed without the cover letter to the undersigned. Doc. 20. Thus, it appears to seek relief from this Court. In any event, the Clerk docketed these filings as "Notices" which seek to have this Court or some other Court "direct the Superior Court Reporter to issue an errata sheet from the trial of the case to correct and amend pages 211 and 830 of said trial transcript." Docs. 17 at 2; 20 at 1.

In these notices, Petitioner contends that the transcript was "intentionally 'red lined' by A.D.A. Thomas/Puhala who directed the court reporter to omit content prejudicial to the [victim]." *Id.* Petitioner complains that the transcript does not accurately reflect the true recording of the proceedings due to "collusion and conspiracy" between A.D.A. Thomas/Puhala and the court reporter. *Id.* Petitioner notes that his appellate counsel requested an errata sheet on the "erroneous jury

instruction issue," but he does not argue that he sought correction of the transcript. The alleged discrepancies consist of the following:

> (1) On page 211, the transcript reads "Father: Well, that's kind of like –sin—you know, but here's the . . . .here's the—." Petitioner argues it should read: "Father: Well, that's kind of like what Caesar, not Caesar, Pontius Pilate said to Christ isn't it?"

> (2) On page 830, the transcript reflects that after the jury announced the verdict, Petitioner said: "stupid bitch," but Petitioner herein states that he actually said, "lying bitch."

Docs. 17, 20 at 1.

To the extent Petitioner asks this Court to direct the trial court to alter the record, the Court construes the request as a motion to expand the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases, and his request is denied. "The ability of a habeas petitioner to introduce new evidence into the record depends on the interplay between two provisions: 28 U.S.C. § 2254(e)(2) and Habeas Corpus Rule 7." *Ward*, 592 F.3d at 1162 (internal quotations and citation omitted). Habeas Rule 7 preceded the enactment of §2254(e)(2) and provides that the district "judge may direct that the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the petition." Rule 7 of the Rules Governing Section 2254 Cases. Additionally, the Eleventh Circuit has held that a petitioner must comply

with § 2254(e)(2), which addresses the requirements to obtain an evidentiary hearing, in order to expand the record under Rule 7. *Ward*, 592 F.3d at 1162-1163.

Section 2254(e)(2) provides: "If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows . . . a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). Since the Court must require Petitioner to make the same showing to obtain an expansion of the record under Rule 7, the Court reviews the factual predicates asserted by Petitioner to determine whether the transcript discrepancies should have been discovered before now.

Though Petitioner argues that the discrepancy was due to collusion, he states no explanation why the discrepancy could not have been discovered before now. Indeed, a Georgia statute mandates the procedure for correcting the transcript of a trial:

> Where any party contends that the transcript or record does not truly or fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court shall set the matter down for a hearing with notice to both parties and resolve the difference so as to make the record conform to the truth. If anything material to either party is

omitted from the record on appeal or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the appellate court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected and, if necessary, that a supplemental record shall be certified and transmitted by the clerk of the trial court. The trial court or the appellate court may at any time order the clerk of the trial court to send up any original papers or exhibits in the case, to be returned after        final        disposition        of        the        appeal.

O.C.G.A. § 5-6-41(f).  Whether the transcript is complete pursuant to

OCGA § 5-6-41(f) is reviewable on appeal.  *See Bamberg v. State*, 839

S.E.2d 640, 646 (2020) (citing *Johnson v. State*, 805 S.E.2d 890 (2017)

("An appellant is entitled to a complete and correct transcript, one that

discloses what transpired in the trial court not only truly but fully.")); *see*

*also Gadson v. State*, 815 S.E.2d 828, 835 (2018).   Georgia courts

interpret the word "complete" as "meaning sufficient for [the movant] to

identify errors" and the appellate Court's ability to evaluate the errors

then enumerated.  *Johnson*, 805 S.E.2d at 895-96.

Petitioner's concern regarding the completeness of the state court

record is belated.  He could have used the state's procedural devices to

ensure the record was full and complete.  The transcript was clearly

available to him, as he specifically notes that "attorney J. Scott Key also

did request an errata sheet on the erroneous jury instruction issue . . . ."

20

*See, e.g.*, doc. 20 at 2.  But he apparently did not pursue this diligently in the state court system.  Thus, to the extent he requests an expansion of the record, or even if he asks this Court mandate that the Superior Court provide an altered version of the record, his request is **DENIED**.

Alternatively, to the extent Petitioner seeks to amend his petition to claim some harm arising from collusion between the court reporter, the A.D.A., and Puhala, his request is likewise denied, as it is both untimely and likely procedurally defaulted because the argument was not considered on direct review but could have been (though he likely would have been denied relief).  *Davenport v. United States*, 217 F.3d 1341, 1343 (11th Cir. 2000); *see also*, *e.g.*, *Smith v. State*, 230, 304 S.E.2d 716 (1983) (holding that the appellant's general assertion of harm due to missing portions of a transcript was insufficient because he failed "to show how he was harmed or to raise any issue which this Court is unable to adequately review because of skips in the record").

## II.    Petitioner's Habeas Claims Should Be Dismissed.

The Court finds that Grounds (1), (2), and (3), asserting ineffective assistance of counsel claims related to both his trial counsel and his appellate counsel, were decided by state courts on the merits, and thus

affords the above-discussed AEDPA deference to those decisions. *Williams v. Alabama*, 791 F.3d 1267, 1272 (11th Cir. 2015); *see also Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (holding that the last state court decision that provides relevant rationale is where the federal court should "train its attention."). Petitioner's Claims 4-9 are not properly before the Court. As discussed below, his Claims 10 and 11 are procedurally defaulted, and Claim 12 fails to the extent it is cognizable at all. Therefore, all of his claims should be dismissed.

A. Petitioner's Ineffective Assistance of Counsel Claims

i. *Legal Standard: Ineffective Assistance in Habeas Cases*

To obtain relief on his claims of ineffective assistance of counsel, a petitioner must establish two elements. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, he must prove that "his counsel's performance was deficient, which means that it 'fell below an objective standard of reasonableness' and was 'outside the wide range of professionally competent assistance.'" *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 928 (11th Cir. 2011) (quoting *Strickland*, 466 U.S. at 688, 690). When considering whether counsel's performance was deficient, the Court "review[s] counsel's actions in a 'highly deferential' manner"

22

and applies "a strong presumption . . . of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 689). Second, a petitioner must establish prejudice, which means that "but for his counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694).

As is required here, establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *Harrington*, 562 U.S. at 101. When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself. *Id.* Thus, for purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410. Here, the state court's determination that Petitioner's claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the

correctness of the state court's decision.  *Harrington*, 562 U.S. at 101 (citing *Yarborough,* 541 U.S. at 664).

>    *ii.    Background on Petitioner's Representation*

Petitioner hired Terry Jackson to represent him in his defense in October 2009.  Doc. 1 at 24.  Jackson practiced with Michael Schiavone, and Steve Sparger "did contract work for Jackson."  *Id.*  Beginning late winter 2011, Jackson became so ill that he entered hospice care.  *Id.*  He died on March 30, 2012.  *Id.*  Meanwhile, Petitioner, a licensed attorney at the time, entered an appearance on his own behalf in January 2012. *See* doc. 9-12 at 93; 96.  Petitioner states that he decided to enter an appearance because he was concerned that "nothing was getting done" on his case on account of Jackson's illness.  Doc. 1 at 24.  In any event, because he was a licensed attorney, he was not given a *Faretta*[3] hearing

---

[3]*See Faretta v. California,* 422 U.S. 806 (1975) (holding that criminal defendants' constitutional right to self-representation is triggered by the defendant's clear and unequivocal assertion of a desire to represent himself); *see also Raulerson v. Wainwright,* 469 U.S. 966, 969-70 (1984) (Marshall, J. dissenting) (noting trial court's obligation to conduct a *Faretta* hearing at which defendant is "made aware of the dangers and disadvantages of self-representation.")

although the trial judge allowed Petitioner to represent himself. Doc. 9-12 at 95.

Jackson's law partner, Schiavone, eventually took over Petitioner's case with Petitioner serving as co-counsel. *Id.* at 92-98; doc. 9-8 at 531. Petitioner alleges that Schiavone was generally overwhelmed and unprepared for trial, and that he had not interviewed witnesses. For example, early in the defense, Sparger had contacted Amy Morton, an expert originally hired by Jackson to analyze the forensic interviews conducted with the victim. Doc. 1 at 25. However, after Schiavone took over Petitioner's case, "no one followed up with [Morton] about the case." *Id.* On June 4, Schiavone asked the trial court for a continuance, which was denied. *Id.* at 25-26. He did not file a motion and did not rely on Georgia's "providential cause statute" to make his request, but told the judge, he was "not familiar at all with any of the evidence in this case." *Id.* at 26. He told the Court that "to force the defendant to proceed to trial in light of this type of evidence, to me, would be unconscionable," after recounting the death of his partner and describing aspects of

discovery which he had not been able to review and redact in the manner he desired. *See* doc. 9-9 at 101-02.

Trial began as scheduled on June 5, 2012. Doc. 1 at 26. Petitioner asserts that he and Schiavone "engaged in yelling matches" during the trial, fighting over strategy. *Id.* He complains that the jury learned of the victim's 2006 interview with Uritescu, but that, because the expert, Morton, had not been called, no testimony was entered on Petitioner's behalf which might have "pointed out [Uritescu's] failure to follow the proper interviewing protocol and how he suggested answers to [the victim] that got picked up by the State." *Id.* In Petitioner's opinion, "[n]o one testified about how [the victim] continued to seek out [his] company," which, according to Petitioner, "is abnormal behavior for victims of child molestation." *Id.* Petitioner was convicted by the jury for the charged offenses. Doc. 9-7 at 58.

Appellate counsel Scott Key filed the operational Motion for New Trial, doc. 9-8 at 46-78, and represented Petitioner at the hearing on the Motion on August 5, 2013. *See* doc. 9-11 at 228-344. Key, who also represented Petitioner on appeal, did not raise a *Faretta* argument. Doc. 1 at 27. Appellate counsel likewise did not argue that trial counsel failed

to pursue a motion for continuance based on a statutory "providential cause." *Id.* Also, he did not raise trial counsel's failure to retain the expert witness to testify about the forensic interview. *Id.* In any event, the appellate court refused to consider any ineffective assistance claims because Petitioner acted as co-counsel during the trial. *Madison*, 766 S.E.2d at 216 (citing *Seagraves v. State,* 376 S.E.2d 670 (1989) and quoting *Mullins v. Lavoie,* 290 S.E.2d 472 (1982) ("[When a criminal defendant elects to represent himself, either solely or in conjunction with representation or assistance by an attorney, he will not thereafter be heard to assert a claim of ineffective assistance of counsel with respect to any stage of the proceedings wherein he was counsel.")).

> iii.    *Claim I: Ineffective Assistance of Appellate Counsel*

Petitioner's first claim is that he received ineffective assistance of appellate counsel when his post-trial attorney did not challenge the lack of a *Faretta* hearing in the Motion for New Trial or on appeal. Doc. 1 at 35-40. The Georgia habeas court denied this claim and found that "Petitioner did not proceed without counsel, he served as co-counsel with

his retained attorney." Doc. 9-13 at 5. As quoted by the state habeas

court in discussing *Faretta*:

> when a defendant asserts the right to self-representation, it
> is the responsibility of the trial judge to ensure that the
> decision to dismiss counsel and proceed pro se has been
> knowingly and intelligently made and that the defendant has
> made the choice to proceed without the benefit of counsel with
> full awareness of the consequences.

Doc. 9-13 at 4 (citing *Faretta*, 422 U.S. 806 and *Wiggins v. State*, 782

S.E.2d 31 (2016)). The state habeas court applied the literal meaning of

the quoted portion to come to its holding, which was that the "record

clearly shows that the two attorneys worked as co-counselors," and

therefore, "Petitioner did not proceed without counsel, he served as co-

counsel with his retained attorney." *Id.* at 5. As such, the state habeas

court found, "Petitioner did not proceed without the benefit counsel and

thus a *Faretta* hearing was not required." *Id.* Accordingly, Petitioner did

not show that his appellate counsel's failure to argue this claim

constituted deficient performance under *Strickland* or that he had been

prejudiced by the omission.

Petitioner, in effect, claims the state habeas court's application of

*Strickland* was unreasonable by asserting that his appellate counsel's

failure to raise *Faretta* on appeal was "not the result of a tactical or

strategic decision," and thus consequently constitutes deficient performance. Doc. 1 at 37. He also claims he was prejudiced because he "did not foray into serious level felony work" and was thus ill-equipped to defend himself against the indictment, and therefore, his self-defense resulted in an unfair conviction. *Id.* at 35. Petitioner makes no argument that the factual conclusion of the state habeas court regarding its observation that he "served as co-counsel with his retained attorney" and thus was not *pro-se* constituted an unreasonable determination of facts. As such he has not met his burden under 28 U.S.C. § 2254(d)(2). *See Brumfield*, 576 U.S. at 314; *Pye*, 50 F.4th at 1035. The Court's own review of the record reflects that while he and Schiavone obviously disagreed at times, there were no instances where Petitioner sought to act as counsel but was refused. There is no other evidence he did not serve as co-counsel. Consequently, the state habeas court's factual finding that he acted as co-counsel was a reasonable determination of facts in light of the evidence presented to the state habeas court. *See* 28 U.S.C. § 2254(d)(2).

Petitioner also has not shown the state habeas court's deficient performance analysis was unreasonable by merely arguing that his

counsel's failure to make the *Faretta* argument was not a tactical decision. A petitioner alleging ineffective assistance of appellate counsel "must show that counsel's performance was so deficient that it fell below an objective standard of reasonableness as well as demonstrate that but for the deficient performance, the outcome of the appeal would have been different." *Black v. United States,* 373 F.3d 1140, 1142 (11th Cir. 2004); *see also Clark v. Crosby,* 335 F.3d 1303, 1312 n. 9 (11th Cir. 2003) ("[T]he only question under the prejudice prong of the *Strickland* test is whether there was a reasonable probability that the appellate court, [had appellate counsel not been deficient,] . . . would have granted [the petitioner] a new trial."). Courts must "indulge [the] strong presumption" that counsel's performance was reasonable and that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690; *accord Williams v. Head,* 185 F.3d 1223, 1227-28 (11th Cir. 1999) (presuming counsel rendered effective assistance).

The reasonableness of a counsel's performance is an objective inquiry. *Chandler v. U.S.*, 218 F.3d 1305, 1314 (11th Cir. 200). If the approach taken "might be considered sound trial strategy," counsel

cannot be adjudged incompetent for performing in a particular way in a case. *Darden v. Wainwright,* 477 U.S. 168 (1986). "And because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler* 218 F.3d at 315. Petitioner's suggestion that appellate counsel's failure to appeal this claim was deficient because it was not a tactical one fails because, even if not intentional, it is not objectively unreasonable. Not appealing a claim which would have failed because it was unsupported by the record is objectively reasonable.

Finally, Petitioner does not claim that, had he known he would be unable to later assert ineffective assistance, he would have foregone his self-defense. Petitioner thus fails to show how he was prejudiced by his appellate counsel's failure to argue *Faretta* on appeal, but rather indicates merely how he was prejudiced by his own self-defense. Even taking the leap for him, there is no evidence that, had the Georgia Court of Appeals heard his *Faretta* argument, it would have allowed him to pursue his ineffective assistance claims and furthermore, he has presented no evidence that the claims would have been successful. *See*

31

*DeYoung v. Schofield,* 609 F.3d 1260, 1283 (11th Cir. 2010) (observing that in order to ascertain whether appellate counsel was ineffective in failing to raise, . . . a claim of trial-counsel ineffectiveness, a court must "review the merits of the omitted [or inadequately raised] claims"). Therefore, he cannot show he was prejudiced, and his Claim 1 should fail.

> iv.    *Claim II: Trial Counsel Was Ineffective for Failing to Move for a "Providential Cause" Continuance and Appellate Counsel Failed to Appeal*

Petitioner next claims that trial counsel was ineffective for failing to seek a continuance based on the "providential cause" statute, and that appellate counsel was ineffective when he failed to challenge the denial of a continuance on direct appeal. Doc. 1 at 40-43. The "providential cause" statute provides that the

> illness or absence, from providential cause, of counsel where there is but one, or of the leading counsel where there are more than one, shall be a sufficient ground for continuance, provided that the party making the application will swear that he cannot go safely to trial without the services of the absent counsel, that he expects his services at the next term, and that the application is not made for delay only.

O.C.G.A. § 17-8-24. Petitioner claims, although Schiavone asked for a continuance, he "apparently never invoked this statutory section in his request and never filed a written motion for continuance." Doc. 1 at 40.

32

He also claims that, since the failure to invoke the statute or file a written motion for continuance was not a strategic decision, it constitutes deficient performance. Moreover, he recounts that Schiavone admitted that the denial of continuance was "the most serious thing that happened in the case." *Id.* at 41. Similarly, he asserts appellate counsel noted that the record contained "preparation issues" where "some things . . . appear to be unanticipated as the trial unfolds," and yet failed to argue the providential cause on appeal. *Id.* Petitioner claims he was prejudiced by this failure because he did not receive the benefit of the expert witness hired for trial but not called. *Id.* at 42-43.

As noted, appellate counsel did attempt to argue ineffective assistance of counsel, but the Georgia Court of Appeals prohibited ineffective assistance claims given Petitioner's self-representation. Therefore, Petitioner obviously cannot show that his appellate counsel was ineffective because he cannot show he was prejudiced; this claim would have never been successful on appeal because it was effectively categorically denied. Therefore, his claim against his appellate counsel on this basis fails.

33

Next, as to trial counsel's effectiveness, the state habeas court found two facts meaningful: (1) Jackson, Petitioner's first attorney, passed away March of 2012 and trial began on June 5, 2012; and (2) Schiavone entered the case beginning in January of 2012, serving as co-counsel with Petitioner. Doc. 9-13 at 7; *see also* doc. 9-12 at 93-94; 9-8 at 531-532. Accordingly, the trial court found that Schiavone had enough time to review the case before trial. Doc. 9-13 at 7. Given the length of time between Jackson's death and the trial, the state habeas court reasoned, Petitioner had not demonstrated ineffective assistance in Claim 2 because he had not shown any abuse of discretion by the trial court which could have been disturbed on appeal, even had the motion been predicated on providential cause. *Id.*

Indeed, Respondent notes that on January 9, 2012, the trial court held a hearing during which time the trial judge informed Petitioner that his original attorney would no longer represent him, and that Petitioner should decide whether to proceed with Schiavone or employ another attorney. Doc. 8-1 at 12 (incorrectly citing doc. 9-13 at 93-94; *see* doc. 9-12 at 93-94). Petitioner chose Schiavone and to act as co-counsel, *id.* and the trial judge allowed it, doc. 9-8 at 531. Therefore, Petitioner's

34

representation had already been shifted for almost five months at the time of the request for continuance in June 2012, and it had been over two months since Jackson's death. Consequently, it is not conclusive that the trial judge would have granted the motion for continuance had it been urged on the providential cause basis. As the state habeas court pointed out, given how much time had passed with Schiavone as lead counsel, the providential cause may not have been a successful argument. Thus, Petitioner cannot show prejudice. Because the state habeas court's analysis reasonably applied *Strickland*, the Court should accord deference to the state habeas court on this claim.

> v. *Claim 3: Trial and Appellate Counsel's Failure to Raise Expert Evidence*

Prior to his death, Jackson engaged an expert, Amy Morton, to analyze Petitioner's file, but Schiavone failed to call or communicate with Morton when he began representing Petitioner. Doc. 1 at 43-44. At the state habeas court hearing, Schiavone testified that he did not consult with the expert because he "just . . . physically couldn't do it all." *Id.* at 44. At the state habeas hearing, Petitioner engaged a new expert, Dr. Nancy Aldridge, who testified as to the omitted expert opinion that Detective Uritescu's interview of the victim was faulty. Doc. 9-6 at 42-

88.    Dr. Aldridge's opinion was that Uritescu did not follow the procedures required by his training in that he failed to give "open ended free recall questions." *Id.* at 75.  Dr. Aldridge stated that Uritescu asked "leading questions," introduced words that should not have been introduced, some of which later became the victim's words, and failed to follow up on discrepancies between interviews. *Id.* at 75-76.  She opined that the words Uritescu introduced became the victim's believed story, and ultimately manifested themselves at trial. *Id.* at 79-80.

Dr. Aldridge also testified as to the victim's behavior after the interactions with Petitioner.  Doc. 9-6 at 80.  She opined that the victim's tendency to text or call Petitioner, or ask Petitioner to rub her back, constituted actions which were inconsistent with a person who had been molested by that person.  She reported that the victim did not engage in "active avoidance" of Petitioner or any other thing that would be considered reminiscent of the encounter. *Id.* at 82.  The state habeas court considered this testimony by weighing it against trial testimony from the victim, as well as in-court testimony which was similar to that of Dr. Aldridge. *See* doc. 9-13 at 8 ("[T]here was testimony regarding the victim's behavior that was arguably inconsistent with child molestation

36

but there was also testimony of behavior that supported the victim's claims of child molestation.") The state habeas court found that expert testimony "understandably could have helped the defense," but "there was also sufficient evidence to support the victim's claims and testimony that the close familial relationship explained the victim's behavior." *Id.* (citing *Madison*, 766 S.E.2d 206). Therefore, Petitioner had not shown prejudice to his defense given the evidence in the case. *Id.*

Petitioner argues that the state habeas court did not reasonably apply *Strickland* because it evaluated the claim based on whether there was sufficient evidence to convict Petitioner, failing to measure the "strength of the omitted evidence, its importance in the context of the trial, or the strength of the totality of the evidence." Doc. 1 at 47. However, the state habeas court's holding implicitly relied on *Strickland* to find Petitioner could not show prejudice. Finding that there was sufficient evidence to explain the questions raised by petitioner via Dr. Aldridge is probative to whether he had shown prejudice.

Furthermore, Petitioner has not met his burden to show that Schiavone's omission of Morton constituted deficient performance. *White v. Singletary,* 972 F.2d 1218, 1220 (11th Cir.1992) ("The *[Strickland]* test

37

has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done.") He merely argues that Schiavone did not make an intentional decision to forego the expert. His subjective choices are not at issue under *Strickland*, however. *Chandler,* 218 F.3d at 1315 & n. 16. As explained, *Strickland* calls for an "objective inquiry into the reasonableness of counsel's performance—an inquiry which asks only whether 'some reasonable lawyer' could have pursued the challenged course of conduct. A reasonable lawyer could have chosen not to pursue an expert who suggested that a child who showed affection to her abusive stepfather could not have been molested by him. It is readily apparent to this Court why such testimony may have backfired given a child-victim's fragile mental state and a jury's sympathy towards that. Because Petitioner has failed to show that the state habeas courts' application of *Strickland* was unreasonable, Claim 3 should fail.

B. Petitioner's Ineffective Assistance Claims 4-9

Petitioner's next group of claims argue some of the ineffective assistance of trial counsel claims Petitioner first brought in his state habeas petition, but which were omitted from Petitioner's direct appeal.

Doc. 9-3 at 9-10; doc. 1 at 48-55. He alleges trial counsel was ineffective for failing to: investigate relevant witnesses (Claim 4); invoke the marital privilege (Claim 5); object to unredacted portions of the recorded phone calls between the victim and the Petitioner (Claim 6); object to the audio recording between the victim and her mother (Claim 7); properly cross-examine the victim (Claim 8); and object to the testimony of Alfonso Habersham and in his cross-examination of Habersham. Doc. 1 at 48-55.[4]

Respondent counters that "the state habeas court deemed these claims to be procedurally defaulted under state law," and urges the Court to "defer to the state habeas court's finding of default." Doc. 8-1 at 18-19. As to these claims, the state habeas court held:

> The appellate court did not consider any of Petitioner's assertions of ineffective assistance of trial counsel on direct appeal. This Court likewise cannot consider any of Petitioner's claims against trial counsel because Petitioner served as co-counsel at trial. Therefore, the Court finds no basis for relief under grounds four through nine.

Doc. 9-13 at 9. Generally, procedural default can arise in two ways: (1) when the state court correctly applies a procedural default principle of

---

[4] These claims were alleged as Claim 6, Claim 4, Claim 5, Claim 7, Claim 8, and Claim 9, respectively, in Petitioner's state habeas petition.

state law and concludes that the petitioner's federal claims are barred; or (2) when the petitioner "never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred" in state court. *Carruth v. Comm'r, Ala. Dep't of Corr.*, 93 F.4th 1338, 1354-55 (11th Cir. 2024) (citing *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999) (per curiam)).

The appellate court enforced Georgia law in refusing to review Petitioner's ineffective assistance claim because he was co-counsel, and, pursuant to that law, "when a criminal defendant elects to represent himself, either solely or in conjunction with representation or assistance by an attorney, he will not thereafter be heard to assert a claim of ineffective assistance of counsel with respect to any stage of the proceedings wherein he was counsel." *Mullins*, 290 S.E.2d at 474. Thus, while the Georgia Court of Appeals applied state law to reject Petitioner's ineffective assistance claims, and then the state habeas court agreed as to the new claims, the state habeas court did not find procedural default of this claim in the ordinary sense, even though it could have. *Carruth*, 93 F.4th at 1355 (When a procedural default arises in the first instance, "a federal court must determine 'whether the last state court rendering

judgment clearly and expressly stated that its judgment rested on a procedural bar."")  Instead, Petitioner was again legally barred from asserting a claim that his counsel was ineffective because of substantive state law holding that *he was* counsel.

In other words, instead of finding procedural default, the state habeas court relied upon a rule established by the Georgia Supreme Court, which prohibits criminal defendants acting "either solely *or in conjunction* with representation or assistance by an attorney [from asserting] a claim of ineffective assistance of counsel with respect to any stage of the proceedings wherein he was counsel." Doc. 9-13 at 9 (emphasis added).  The state habeas court broadly interpreted the rule to mean that if a defendant retains any authority at all to act as his own counsel, then he is precluded from asserting an ineffectiveness claim against his co-counsel counsel.  *Id.*

Unless a prior Supreme Court decision "squarely addresses" the issue presented in the habeas case, *Wright v. Van Patten,* 552 U.S. 120, 125 (2008), or establishes a legal principle that "clearly extend[s]" to the conduct at issue in that case, it cannot be said that the law is clearly established under AEDPA.  *Id.* at 123; *Moses v. Payne,* 555 F.3d 742, 754

(9th Cir.2009). The United States Supreme Court has not established as unconstitutional this Georgia law, or, for that matter, any similar state law or legal principle which allows attorneys to act as co-counsel and yet also does not allow them to plead ineffective assistance.[5] Consequently, there was no "clearly established" federal law to guide the state appellate court when it announced its decision, nor when the state habeas court agreed with the basis of that decision. *Van Patten,* 552 U.S. 120. Since there is no "clearly established federal law" on the issue, the state court's determination is not reviewable in this Court. *Mikell v. Brian*, 2010 WL 6797007, at *6 (S.D. Ga. Nov. 9, 2010) (citing *House v. Hatch*, 527 F.3d 1010, 1017 (10th Cir. 2008)). Consequently, there is no need to assess whether the state court applied controlling Supreme Court authority in an objectively unreasonable manner or contrary to law. *Hatch*, 527 F.3d at 1018 ("[O]nly if we answer affirmatively the threshold question as to the existence of clearly established federal law, may we ask whether the state court decision is either contrary to or an unreasonable application of such law."); *see also Williams,* 529 U.S. at 409.

---

[5] To be clear, Petitioner has not asserted that the Georgia law itself is unconstitutional or any due process implications resulting from the enforcement of that law. He has simply presented renewed ineffective assistance claims. Thus, such questions are beyond the scope of the analysis.

The Court is aware of the tension arising in this case: Petitioner was considered to have represented himself and thus was not entitled to pursue a *Strickland* claim, while also being considered sufficiently represented to render a *Faretta* hearing unnecessary. However, to allow petitioners, even those who are barred attorneys, to proceed *pro se* but later argue their counsel was ineffective, would create an untenable precedent. Furthermore, the premise does not run afoul of clearly established federal law. *Raulerson*, 732 F.2d at 809 (citing *Brown v. Wainwright,* 665 F.2d 607, 611 (5th Cir. 1982); *Chapman v. United States,* 553 F.2d 886, 893 n. 12 (5th Cir. 1977)) ("A defendant may waive his right of self-representation by electing to act as co-counsel."). Even under federal law, a defendant's choice to proceed *pro se* necessarily acts as a waiver of any future claim regarding the denial of effective assistance of counsel. *See Faretta,* 422 U.S. at 834 n. 46 ("[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel'"); *see also United States v. Roggio*, 863 F.2d 41, 43 (11th Cir. 1989). While the Court has found no direct corollary to the licensed co-counsel situation it confronts here, the same is true in the analogous

43

situation where a *pro se* defendant receives standby counsel. *Simpson v. Battaglia,* 458 F.3d 585, 597-99 (7th Cir. 2006) (at trial, "the inadequacy of standby counsel's performance, without the defendant's relinquishment of his *Faretta* right, cannot give rise to an ineffective assistance of counsel claim"); *United States v. Morrison,* 153 F.3d 34, 55 (2d Cir. 1998) (no ineffectiveness claims allowed where defendant "retained control of his own defense throughout the proceedings"). As noted above, Petitioner has not disputed the state habeas court's factual findings regarding the extent of his self-representation, such as, for example, making an argument that he attempted to file motions or call witnesses himself and yet the trial judge disallowed him due to his co-counsel's appearance in the case.[6] Given all these reasons, the Court finds that the state court's refusal to hear these claims based upon its own state law, which is not contrary to established federal law, renders those claims unreviewable by this Court. Claims 4-9 should be denied.

---

[6] Nor has he shown that he argued that he asserted a "clear and unequivocal demand to represent himself." *See, e.g., Raulerson*, 732 F.2d at 809 ([Raulerson's] agreement to proceed with the assistance of an attorney waived that [self-representation] request.")

C. Claim 10: Trial Court Error: Due Process

In Claim 10, Petitioner alleges trial court error, titling his accusation as "Materially False Testimony/Evidence, 14th Amendment Due Process and Fair Trial Violations, & Prosecutorial Misconduct." Doc. 1 at 56. In this claim, Petitioner makes several accusations against the prosecution team. He claims that the prosecution team "induced, fostered, and planted" perjury by leveraging a jailhouse witness-informant's sentence to gain his testimony. *Id.* at 57. He next claims that A.D.A. Thomas instructed the witness to "blurt out" the existence of recordings made by the victim which had been suppressed. *Id.* He claims that the prosecution did this in retaliation for losing their appeal on the suppression of the recordings. *Id.* He then claims that the transcript of the initial interview between the informant and the state was intentionally kept from him, which "further establishes bad faith and due process violations engendered to deny [him] a fair trial. *Id.*

Madison claims that his only interaction with the informant was when the informant sought paid representation from him after Madison's bar license was reinstated. Doc. 1 at 58. Madison claims that the meeting was initiated "under false pretenses" but does not elaborate. *Id.*

He claims that the prosecution team thereafter revealed the informant in an intentionally untimely manner. *Id.* at 58-59 ("This was, in fact, a thinly veiled plot by the prosecution to use this convicted felon directly subsequent in time to the adverse appellate decision . . ."). Petitioner claims, without further support, that the "statements and testimony of this planted felon and suborned perjurer were known to be false by the prosecution, materially damaging false statements in Madison's case and actually false" and in violation of *Brady v. Maryland*, 373 US 83, 87 (1963), among other cases. *Id.* at 59. Petitioner seeks an evidentiary hearing on the issue. *Id.*

Respondent counters that although Petitioner did raise on appeal that the trial court erred in denying his motion for mistrial, which was sought specifically on account of the informant mentioning the recording and the trial judge's accidental reference to it as a video, Petitioner has never raised the constitutional violations he raises herein. Doc. 8-1 at 21. Respondent argues that Petitioner's claim is thus procedurally defaulted. *Id.*

Indeed, Petitioner argued in his appellate brief that the trial court erred in denying Petitioner's motion for mistrial after the informant

46

referenced the recording and the trial judge referenced it as a "video." Doc. 9-12 at 19-21.  In his federal habeas petition's Reply, Petitioner merely states that "[s]ince the rights to a fair trial are evidently rights under the US Constitution it is propounded that the Georgia Court of Appeals was on sufficient notice of the constitutional issues therein." Doc. 15 at 9.  He claims that "[t]he issue should not be considered defaulted where objected to at trial and on appeal as the right to a fair trial is one of constitutional dimensions and *Brady* of course, is a case resting squarely on those rights." *Id.* at 10.

Notwithstanding his argument that the state should have been on notice of a potential claim of the violation of his constitutional rights by virtue of their existence, Petitioner did not exhaust this claim. *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd*, 250 F.3d at 1313 (citations omitted)).  Habeas petitioners generally cannot raise claims in federal court if those claims were not first exhausted in state court.  *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005); 28 U.S.C. § 2254(b)(1).

Moreover, "[i]t is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1343 (11th Cir. 2004) (citing *Picard v. Connor,* 404 U.S. 270, 275-76 (1971) and *Anderson v. Harless,* 459 U.S. 4, 6 (1982)). Rather, in order to ensure that state courts have the first opportunity to hear all claims, federal courts "have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." *Picard,* 404 U.S. at 275.

The mere existence of Constitutional rights does not allow Petitioner to circumvent the requirements of exhaustion. Moreover, because Petitioner failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure constitutes a state procedural bar which presently creates a procedural default. *See, e.g., Coleman v. Thompson,* 501 U.S. 722, 735 n. 1 (1991) (citations omitted) ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would

48

now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas."). Furthermore, because the procedural rules are adequate and independent, this Court is precluded from reviewing them. *Henderson*, 353 F.3d at 891 ("Since Henderson failed to properly exhaust these claims in the state courts, and now is undeniably barred by firmly established and consistently applied state procedural rules from raising them, the claims are procedurally defaulted, and our review is precluded by this adequate and independent state procedural ground.").[7] Claim 10 fails because there is no basis for federal relief; likewise, Petitioner is not entitled to an evidentiary hearing. *Snowden,* 135 F.3d at 736 ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."); see also 28 U.S.C. § 2254(e)(2). It should therefore, be dismissed.

---

[7] If Petitioner now filed a state habeas petition asserting these claims, the new petition would be barred by multiple procedural rules, including, as argued by the Respondent, the rule against successive petitions, O.C.G.A. § 9-14-51, as well as the state's own procedural default rules and the statute of limitations. O.C.G.A. §§ 9-14-48(d); 9-14-42(c).

D. <u>Claim 11 Trial Court Error: Jury Instructions</u>

Though Petitioner's next claim is difficult to discern, it is apparent that he seeks to rehash the faulty jury instructions which led to his sexual battery and aggravated sexual battery convictions being reversed. Doc. 1 at 59-60. Petitioner argues that the erroneous jury instruction which "misstated" the law not only tainted his reversed convictions, but his remaining child molestation conviction as well. Specifically, he claims the "impact of the impermissible and errant charge" was not only "contained to the issue of consent," which was relevant to the two reversed convictions, but also to the remaining one because the jury was unable to "ferret out this error as limited to that issue." Doc. 15 at 10. He explains that the trial court's discussion of "force" where it was not an element of a crime for which he was ultimately convicted was a violation of his right to fair trial and due process. Doc. 1 at 61.

Though his next argument is unclear, it appears he argues the word "thrusting," contained in the child molestation count's charge, was equally prejudicial to the non-erroneous charge as was the word "force" to his other erroneous charges. Doc. 15 at 11. In response to the Respondent's brief, he asks "[i]f the jury had been instructed that

50

'thrusting' may be inferred as 'evidence of intimidation arising from the familial relationship' would it have been any more prejudicial to the defendant?" *Id.* at 11.  His answer is that it would not, but the Court is unable to discern his point.   In any event, Petitioner argues the instruction shifted the "burden of proof to the Defendant" in a manner which "purports that his status as a family member" penalizes families and "pits the State of Georgia against the institution of marriage, the natural desire to associate as a nuclear family and denies the Petitioner/Defendant a presumption of innocence because of his family status." Doc. 1 at 63.  And he claims the error was akin to claiming that "force may be inferred as evidence of intimidation arising from the Defendant's religion, skin color, or frequency of being in the vicinity of the accuser, i.e., mere presence." *Id.*

The provenance of this claim requires a brief review of this case's procedural history.  The Georgia Court of Appeals reversed Petitioner's convictions for sexual battery and aggravated sexual battery based upon its finding that the trial court committed reversible error in a portion of its charge to the jury.  *Madison*, 766 S.E.2d 206.  Specifically, the appellate court found the trial court's charge on "force inferred by

evidence of intimidation arising from the familial relationship" was inappropriate "in a sexual battery case involving a victim who is over the age of 18." *Id.* at 215. Furthermore, it found that "the issue of the victim's consent went to the heart of Madison's defense" and therefore the error was not harmless. *Id.* at 216. Consequently, the convictions for the alleged crimes which occurred after the victim reached maturity were reversed. *Id.*

After the reversal, the State eventually "nolle prossed" the reversed claims. Doc. 9-7 at 18; *id.* at 4. Then, the trial court re-sentenced Petitioner for his remaining conviction for child molestation. Doc. 9-7 at 4. Petitioner did not appeal the new judgment or sentence, and the record indicates he did not appeal the Georgia Court of Appeals' reversal of only two of his convictions. Instead, while his case was still pending re-sentencing, he filed his state habeas petition. *Compare* doc. 9-3 (Petitioner's state habeas petition, dated June 30, 2017); *with* doc. 9-2 (state court's resentencing order, dated September 7, 2017); *see also* doc. 9-7 at 4 (same). Thus, he appears to have sought habeas relief on the trial court's initial judgment—not the trial court's second judgment

which sentenced him for the second time, as it came after his petition was filed.

It is difficult to parse Petitioner's exact claim, but to the extent Petitioner merely disagrees with the Georgia Court of Appeals' holding by arguing the erroneous jury instruction not only tainted his now-reversed convictions but also his child molestation conviction, he should have appealed that decision, and if certiorari was denied, he should have sought state habeas relief on the claim when he brought his state habeas petition. To the extent he believes that the sentence he ultimately received (and pursuant to which he is presently confined) was erroneous for any reason, including the jury instructions' impact on his sentence, he should have appealed the trial court's resentencing judgment or sought amendment to add it to the state habeas court petition if allowed by the state procedure. As far as this Court can discern from the record, Petitioner has never sought post judgment, appellate, or collateral relief on the judgment serving as the basis for his Claim 11 in the state court system. It is therefore unexhausted and procedurally defaulted.

Respondent asked the Court to defer to the Georgia Court of Appeals opinion which reversed the convictions not at issue here, but

which did not impact the remaining conviction. Doc. 8-1 at 25. Respondent argues that the Georgia Court of Appeals' holding implicitly upheld the instructions as proper as to the remaining child molestation conviction because it did not reverse it. *Id.* at 27. Yet, the Court cannot defer to a state court opinion which does not address the judgment claimed by Petitioner to be the cause of his confinement and therefore the claim is impossible to review here under § 2254(d). Even if Respondent's argument is correct regarding the Georgia Court's stance on the merits of his remaining jury instruction argument, Petitioner's failure to seek further relief in the state court system on this specific claim bars him from pursuing it here.

Respondent did not raise exhaustion in defense of this claim specifically. *See* doc. 8 at 6. Instead, it summarized its defense to Claim 11 as:

> this ground is new but procedurally defaulted under Georgia's successive petition rule of O.C.G.A. § 9-14-51, as Petitioner did not raise it in his state habeas corpus case and it is clear that it would be deemed successive if now raised in a second state collateral attack. *See Chambers*, 150 F.3d 1324.

*Id.* at 5. Indeed, Petitioner's failure to exhaust this claim by either bringing it before the state habeas court or seeking an appeal on his

sentence mandates that it is now procedurally defaulted. *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) ("If a petitioner fails to exhaust his federal habeas claims in state court, the result is procedural default, which bars habeas relief.") (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, (1999)). Furthermore, Respondent did not waive exhaustion, generally. *See* doc. 8 ("Respondent does not waive exhaustion in this case. See 28 U.S.C. § 2254(b)(3).") Accordingly, though Respondent did not raise exhaustion in defense of this specific claim, Petitioner's failure to even attempt to try to bring this claim in state court mandates it be denied because it would now be procedurally defaulted, as suggested by Respondent. Petitioner has not even attempted to argue that the default should be excused by asserting cause or prejudice arguments. Therefore, Claim 11 fails and should be dismissed.

E. Claim 12: Cumulative Error

Petitioner next raises a cumulative error claim. Doc. 1 at 64-67. He claims that the erroneous jury instruction, combined with the ineffective assistance of counsel, which the state habeas court failed to properly examine, "requires and truly commands relief and a new trial" under the

Georgia Supreme Court's holding in *State v. Lane*, 838 S.E.2d 808 (2020).

*Id.* Respondent argues that the claim is new as pled and therefore defaulted under Georgia's successive petition rule, or, alternatively, fails to state a claim for relief because Petitioner does not allege a violation of a federal constitutional right and federal habeas relief does not lie for purported errors of state law. Doc. 8-1 at 28. Petitioner responds that the claim is not procedurally defaulted because Petitioner could not have raised it in state court until 2020, when *Lane* was decided. Doc. 1 at 65. As he was not allowed to file an amended petition after the state habeas hearing pursuant to state statute, he was unable to pursue the claim in state Court.

Under the cumulative-error doctrine, "a sufficient agglomeration of otherwise harmless or nonreversible errors can warrant reversal if their aggregate effect is to deprive the defendant of a fair trial." *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014) (citing *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012)); (*relying on United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005), *abrogated on other grounds by Davis v. Washington*, 547 U.S. 813 (2006) (considering cumulative error claim on direct appeal). It is unclear

whether such a claim is cognizable in § 2254 cases in the Eleventh Circuit. *Compare Sims v. Singletary*, 155 F.3d 1297, 1314 (11th Cir. 1998) (considering but reversing district court's holding that alleged errors cumulatively resulted in prejudice during sentencing phase which mandated vacating his death sentence) with *Morris*, 677 F.3d at 1132 n.3 ("We need not determine today whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of the AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law.")

The Eleventh Circuit has instead avoided the determination of whether, under current Supreme Court precedent, cumulative error could ever succeed under AEDPA. *See Hill v. Sec'y, Fla. Dep't of Corr.*, 578 F. App'x 805, 810 (11th Cir. 2014) ("[W]e need not decide [whether a cumulative error claim would be cognizable in habeas corpus] here because, even assuming a claim of cumulative error is cognizable in federal habeas proceedings, [Petitioner] would not be able to satisfy that standard."); *Morris*, 677 F.3d at 1132 n.3 ("For our purposes, it is enough to say that Morris's cumulative error claim clearly fails in light of the

absence of any individual errors to accumulate.").  In those cases, where "there is no error in any of the trial court's rulings, the argument that cumulative trial error requires that this Court reverse the defendant's convictions [was] without merit.'" *Insignares*, 755 F.3d at 1284 (quoting *United States v. Taylor,* 417 F.3d 1176, 1182 (11th Cir. 2005) (citations and quotations removed) (alterations in original).

Assuming this claim is cognizable and that it is not defaulted, it fails.  Not only has Petitioner failed to articulate any errors—constitutional or otherwise—which to accumulate, his reliance on solely state law to conclude a cumulative error claim is viable does not warrant federal relief in the Eleventh Circuit.  He has directed the Court to no binding precedent warranting federal relief for cumulative error where constitutional claims were not established.  This claim should, therefore, be dismissed.

## Conclusion

Because Petitioner has not shown that the state court decisions were contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States," the Court should defer to the decisions of the state courts

and should deny relief to Petitioner on Claims 1-3. 28 U.S.C. § 2254(d)(1). As to his Claims 4-9, Petitioner has not identified any federal law, as determined by the Supreme Court, that contradicts Georgia law, which bars self-represented attorney-defendants from pursuing ineffective assistance claims on appeal or collateral appeal. His unexhausted claims are procedurally defaulted, and Petitioner has not argued cause or prejudice to excuse that procedural default. Therefore, his Claims 10 and 11 fail. *Sykes,* 433 U.S. at 87. Finally, even if it is cognizable, Claim 12 is meritless. Accordingly, it is **RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus and his request for evidentiary hearing be **DENIED**. Furthermore, his notices, construed as Requests to Expand the Record, docs. 17, 20, are **DENIED**.

Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue either. 28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court *must* issue or deny a certificate of appealability when it enters a final order adverse to the applicant") (emphasis added).

59

This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED, REPORTED, AND RECOMMENDED** this 7th day of April, 2025.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA