**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

LAWRENCE MADISON,

        Petitioner,

    v.

SHAWN GILLIS, and TYRONE OLIVER,

        Respondents.

CIVIL ACTION NO.: 4:24-cv-29

## O R D E R

After a careful de novo review of the entire record, the Court concurs with the Magistrate Judge's April 7, 2025, Report and Recommendation, ("R&R"), (doc. 21), to which plaintiff objected, (docs. 22, 23.). [1] Petitioner filed his Petition for Habeas Corpus in this Court on February 6, 2024, asserting twelve grounds for relief. (See doc. 1.) Commissioner Oliver moved to intervene as a party Respondent and the Court granted the Motion. (Docs. 5; 7.) Respondent filed his Brief, (doc. 8-1), and Petitioner Replied, (doc. 15). The Court has denied Petitioner's Motion for Discovery, (doc. 13), as well as his "Notices," which the Court construed as Motions to Expand the Record, (docs. 17, 20.) After recounting the factual and procedural history of this case, the Magistrate Judge Recommended that Petitioner's habeas petition be denied. (Doc. 21.) For the reasons explained below, Petitioner's Objection is overruled, the Report and Recommendation is adopted, and his Petition is denied.

---

[1] Petitioner mailed two copies of his Objection, (docs. 22, 23). Doc. 22 is addressed to the Magistrate Judge and contains 74 pages. Doc. 23 is addressed to the Clerk and contains 67 pages. The Court references the version addressed to Judge Ray, (doc. 22), as the two appear verbatim, except some clerical or scanning errors contained within doc. 23. That said, the Petitioner is notified that he need not send two copies of his pleadings to the Court. Filings sent to the Clerk are docketed for review by the assigned judge; he need not separately write the judge for relief.

**BACKGROUND AND PROCEDURAL HISTORY**

On November 4, 2009, the Chatham County, Georgia grand jury indicted Petitioner for child molestation (counts 1, 2, and 3), relevant to a 2006 encounter with his stepdaughter, as well as sexual battery (counts 4 and 5); public indecency (count 6); and aggravated sexual battery (count 7), relevant to a later 2009 encounter with her.   (Doc. 9-7, pp. 65-67.)   Petitioner was represented at trial by Michael Schiavone after the incapacitation and subsequent death of Petitioner's original attorney, Terry Jackson, in March 2012.   (See doc. 9-12, p. 91; see also doc. 9-13, p. 2.) Beginning in January 2012, Petitioner, a licensed attorney, served as co-counsel.   (Doc. 9-13 at 7; see also doc. 9-8, p. 531.)   Petitioner continued to serve as his own co-counsel during trial.   (Doc. 9-13, p. 4.)

During pretrial proceedings the trial court suppressed video recording of Petitioner's 2009 conduct, taken by the victim.   (Doc. 9-7, pp. 155-57.)   But during trial, jailhouse informant Alfonso Habersham referenced the existence of the recording during his testimony.   (Doc. 9-11 at 26.)   The trial judge gave a curative instruction to the jury, asking them to "disregard [the informant's] statement entirely concerning any video," unintentionally exposing to the jury the existence of a video.   (Id. pp. 27-28.)   After the instruction, Schiavone's request for a mistrial was denied.   (Id., p. 28.)

The State dismissed count 1; the court granted Petitioner's motion for directed verdict on counts 2 and 6; and the jury found Petitioner guilty on all remaining counts.   (Doc. 9-7, p. 58; see also doc. 9-11, p. 219.)   The court sentenced Petitioner to 25 years followed by life on probation for aggravated sexual battery (count 7); 20 years consecutive for child molestation (count 3); and 12 months concurrent for sexual battery (counts 4-5).   (Doc. 9-7, p. 58.)   Petitioner appealed, and Georgia Court of Appeals reversed Petitioner's convictions for sexual battery and aggravated

sexual battery upon its finding that the trial court committed reversible error in a portion of its charge to the jury.   Madison v. State, 766 S.E. 2d 206, 215-16 (Ga. Ct. App. 2014).   It explained, "the trial court's charge that '[f]orce may be inferred as evidence of intimidation arising from the familial relationship,' . . . could have confused the jury and resulted in a finding of intimidation based upon the existence of the familial relationship alone." Id., p. 215.   The appellate court rejected his other allegations of error, including his ineffective assistance claims and remanded the case.   See generally id.   The Georgia Court of Appeals dismissed his ineffective assistance claims because he had represented himself as co-counsel.   Id. at 216.

After remand, the State moved to place the reversed sexual battery counts and aggravated sexual battery count on the dead docket and eventually moved to *nolle prosse* them.   (Doc. 9-7, pp. 24, 28.)   The trial court resentenced Petitioner to 20 years on his remaining conviction for child molestation.   (Doc. 9-7, p. 4.)   Meanwhile, Petitioner filed his state habeas petition in Tattnall County Superior Court in June 2017, raising nine ineffective assistance grounds. (Doc. 9-3.)   Those claims are described in the Magistrate Judge's R&R.   (See doc. 21, pp. 6-7.) The state habeas court held a hearing on March 28, 2019, (doc. 9-6), and denied relief on October 14, 2022, (doc. 9-13).   Petitioner's ineffective assistance claims were again denied because he acted as co-counsel at trial.   (Id., pp. 8-9.)   Petitioner then applied to the Georgia Supreme Court for a certificate of probable cause to appeal the state habeas court's ruling, which the Georgia Supreme Court denied.   (See docs. 9-14; 9-15.)

Petitioner timely executed his federal Petition raising 12 grounds for relief challenging his convictions.   (Doc. 1.)   Petitioner asserts in his present Petition these grounds for relief:

1.   Appellate counsel was ineffective when he filed the Motion for New Trial and on appeal for failing to challenge the trial court's failure to give Petitioner a Faretta hearing prior to allowing him to enter as co-counsel at trial.

2.    Trial counsel was ineffective for failing to move for a continuance under the "providential cause" statute under Georgia law, and that appellate counsel was ineffective when he failed to challenge the denial of a continuance on direct appeal.

3.    Trial counsel was ineffective when he failed to coordinate and present a paid expert witness to testify about the victim's behavior, and appellate counsel was ineffective for failing to raise the issue on appeal or in the motion for new trial.

4.    Trial counsel was ineffective for failing to investigate relevant witnesses who could have "debunked" the victim's claims.

5.    Trial counsel was ineffective for failing to invoke the marital privilege on Petitioner's behalf when the State questioned Madison's wife about confidential communications made by Madison relying on the marital relationship.

6.    Trial counsel was ineffective when he failed to object to unredacted portions of the recorded phone calls between the victim and Petitioner.

7.    Trial counsel was ineffective when he failed to object to an audio recording between the victim and her mother, the Petitioner's wife, Andrea Madison, which constituted inadmissible hearsay, was irrelevant, and unduly prejudicial.

8.    Trial counsel was ineffective in his cross-examination of the victim.

9.    Trial counsel was ineffective when he failed to object to the testimony of a jailhouse informant, Alfonso Habersham, and was ineffective in his cross-examination of Habersham.

10.    Trial Court error, described in the Petition as: "Materially False Testimony/Evidence, Prosecutorial Misconduct, and 14th Amendment & 5th Amendment Due Process and Fair Trial and Brady v. Maryland Violations."

11.    Trial Court error, described in the Petition as: "Objectively Unreasonable Jury Instructions, fair trial, and due process violations."

12.    Cumulative Error.

(Doc. 1, pp. 34-35.)

Petitioner insists that the state habeas court's holding was unreasonable, and that he should have been able to pursue his ineffective assistance claims because he was never told that proceeding as co-counsel with Schiavone would preclude him from making ineffective assistance claims on appeal or otherwise.   In other words, Petitioner argues he was never given a "Faretta

warning," and thus gave an unknowing waiver of his right to counsel. (See doc. 1, pp. 35-40); Faretta v. California, 422 U.S. 806 (1975); see also Raulerson v. Wainwright, 469 U.S. 966, 969-70 (1984) (Marshall, J. dissenting from denial of certiorari) (noting trial court's obligation to conduct a Faretta hearing at which defendant is "made aware of the dangers and disadvantages of self-representation.") Both the Georgia Court of Appeals and the habeas court found that Petitioner was prohibited from arguing ineffective assistance of trial counsel, regardless of Faretta, given his status as a licensed attorney and his decision to proceed as co-counsel, which the two courts differentiated from his proceeding pro se.

On his federal petition, the Magistrate Judge found that Petitioner's Grounds (1), (2), and (3), asserting ineffective assistance of counsel claims related to both Petitioner's trial counsel and appellate counsel, were decided by state courts on the merits and thus attributed deference to those decisions under the Antiterrorism and Effective Death Penalty Act ("AEDPA") because their determinations were not unreasonable. (Doc. 21, pp. 22-38.) The Magistrate Judge found that Petitioner's Claims 4-9 were not properly before the Court since there is no "clearly established federal law" nullifying the Georgia common law which had precluded Petitioner from claiming ineffective assistance given his self-representation. Thus, the state court's determination was not reviewable in this Court. (Id., p. 42.) The Magistrate Judge then found that Petitioner's Claims 10 and 11 were procedurally defaulted, (id., pp. 45-55), and Claim 12 failed even if it was cognizable at all, (id., pp. 55-58). Therefore, the Magistrate Judge recommended that all of Petitioner's claims should be dismissed. (Id., pp. 58-49.)

Petitioner's Objection initially faults the Magistrate Judge for failing to properly characterize the victim's actions in the manner which Petitioner believes proper. He complains that rather than referencing the video-recordings as "video-recordings," the Court should recognize

the "extortion and blackmail actions of the complainant," and he notes that the videos were eventually found to be unlawfully recorded and thus excluded from trial.   (Doc. 22, pp. 1-2.)   He then complains that the Court did not mention the depositions of the victim's grandparents, his own criminal complaint against the victim, the presence of witnesses during the criminal activity, and a litany of other generalized criticisms against the Court's Recommendation.   (See id. , pp. 3-12.)   These broad complaints, including and especially those which seek to accuse the victim of extortion, are irrelevant to the grounds he has asserted.   Petitioner's burden in a § 2254 case is to show that he suffered some constitutional error which "had substantial and injurious effect or influence in determining the jury's verdict."   Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (citing Kotteakos v. United States, 328 U.S. 750, 776 (1946)).   The constitutional errors Petitioner alleges in his Petition are that his counsel was ineffective, and he claims certain trial errors harmed him.   As to the tangential factual issues Petitioner asserts in his Objection, a federal court will presume that the state court's factual determinations were correct, and a petitioner may rebut that presumption only with clear and convincing evidence.   See 28 U.S.C. § 2254(e)(1).   Petitioner has offered no evidence rebutting the state courts' factual determinations.   Therefore, the sufficiency-of-the-evidence arguments he makes here are not only irrelevant to any of his claims, most of which concern whether his counsel was effective and not the victim's alleged culpability, but also fail under § 2254.   Thus, the Court reviews the Petition's individual claims to determine whether Petitioner has shown any constitutional violation or an unreasonable application of clearly established federal law.

## LEGAL STANDARDS

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides "[a] general framework of substantial deference [for] our review of every issue that the state courts have

decided" on the merits.  Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th Cir. 2005).   Under that Act, a federal court shall not grant habeas relief on any claim "adjudicated on the merits" in state court unless the state court's decision denying relief was either "contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(1)-(2).

For purposes of § 2254(d)(1), the phrase "clearly established federal law" refers only "to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."   Yarborough v. Alvarado, 541 U.S. 652, 660-61 (2004) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000) (internal quotations omitted)).   The decision of a state court is "contrary to" clearly established federal law when the state court "applied a rule in contradiction to governing Supreme Court case law" or "arrived at a result divergent from Supreme Court precedent despite materially indistinguishable facts."   Dill v. Allen, 488 F.3d 1344, 1353 (11th Cir. 2007).   And a state court's application of federal law is unreasonable "only if no 'fairminded jurist' could agree with the state court's determination or conclusion."   Holsey v. Warden, Ga. Diagnostic Prison, 694 F.3d 1230, 1257 (11th Cir. 2012) (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)); see also Harrington, 562 U.S. at 101 ("[A]n unreasonable application of federal law is different from an incorrect application of federal law." (internal citation, quotation and emphasis omitted)).   Here, "[t]he key word is 'unreasonable,' which is more than simply incorrect."   Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020).   To meet this standard, "a prisoner must show far more than that the state court's decision was merely wrong or even clear error."   Pye v. Warden, Ga. Diagnostic Prison, 50 F.4th

1025, 1034 (11th Cir. 2022) (quoting <u>Shinn v. Kayer</u>, 592 U.S. 111, 118 (2020) (internal quotations omitted)).

Under § 2254(d)(2), courts also must defer to a state court's determination of the facts unless the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Section 2254(d)(2) works much like § 2254(d)(1) in that it requires federal courts to give state courts "substantial deference." <u>Brumfield v. Cain</u>, 576 U.S. 305, 314 (2015). "We may not characterize . . . state-court factual determinations as unreasonable 'merely because we would have reached a different conclusion in the first instance.'" <u>Id.</u>, at 313-14 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301 (2010)) (alteration adopted). District courts presume that the state court's factual determinations are correct, absent clear and convincing evidence to the contrary. <u>Pye</u>, 50 F.4th at 1035; 28 U.S.C. § 2254(e)(1). In sum, AEDPA sets "a difficult to meet, [cit.], and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted).

A critical prerequisite for any state petitioner seeking federal habeas relief is the requirement that he first properly raise the federal constitutional claim in the state courts; <u>i.e.</u>, exhaust it. <u>See</u> 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Ward v. Hall</u>, 592 F.3d 1144, 1156 (11th Cir. 2010) (citing <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989)). "The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11th Cir. 2001). A claim is procedurally defaulted if the petitioner failed to exhaust his state remedies, and the court to

which he would have to present his claims to satisfy the exhaustion requirement would find the claims procedurally barred. Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998). The doctrine of procedural default also dictates that "[a] state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).

Additionally, anyone seeking relief on claims of ineffective assistance of counsel must establish two elements. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, he must prove that "his counsel's performance was deficient, which means that it 'fell below an objective standard of reasonableness' and was 'outside the wide range of professionally competent assistance.'" Johnson v. Sec'y, Dep't of Corr., 643 F.3d 907, 928 (11th Cir. 2011) (quoting Strickland, 466 U.S. at 688, 690). When considering whether counsel's performance was deficient, the Court "review[s] counsel's actions in a 'highly deferential' manner" and applies "a strong presumption . . . of reasonable professional assistance." Id. (quoting Strickland, 466 U.S. at 689). Second, a movant must establish prejudice, meaning that "but for his counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." Id. (quoting Strickland, 466 U.S. at 694). As is required here, establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. Harrington, 562 U.S. at 101. When § 2254(d) applies, the question is not whether counsel's actions were reasonable. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself. Id. The pivotal question is whether the state court's application of the Strickland standard was unreasonable. And, as explained above, for purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams, 529 U.S. at 410. Here,

the state court's determination that Petitioner's claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision on Strickland's prongs.   Harrington, 562 U.S. at 101 (citing Yarborough, 541 U.S. at 664).

## DISCUSSION

Petitioner's Claims 1, 2, and 3, asserting ineffective assistance of counsel claims related to both his trial counsel and his appellate counsel, were decided by state courts on the merits, and thus AEDPA deference is afforded to those decisions.   Williams v. Alabama, 791 F.3d 1267, 1272 (11th Cir. 2015); see also Wilson v. Sellers, 584 U.S. 122, 125 (2018) (holding that the last state court decision that provides relevant rationale is where the federal court should "train its attention.").   Petitioner's ineffective assistance Claims 4-9 are denied for similar reasons. Claims 10 and 11 are procedurally defaulted and Claim 12 fails even if it is cognizable at all. Therefore, as the Magistrate Judge recommended, all of Petitioner's claims are dismissed.

I.    Petitioner's Ineffective Assistance Claims 1-3

Petitioner's first Claim is that he received ineffective assistance of appellate counsel when his post-trial attorney did not challenge the lack of a Faretta hearing on his behalf in his motion for new trial or on appeal.   (Doc. 1, pp. 35-40.)   The state habeas court denied this Claim and found that "Petitioner did not proceed without counsel, he served as co-counsel with his retained attorney."   (Doc. 9-13, p. 5.)   The Magistrate Judge attributed AEDPA deference to the Georgia habeas court on this claim, which had applied the literal meaning of a portion of Faretta in finding:

> when a defendant asserts the right to self-representation, it is the responsibility of the trial judge to ensure that the decision to dismiss counsel and proceed pro se has been knowingly and intelligently made and that the defendant has made the choice to proceed without the benefit of counsel with full awareness of the consequences.

(Doc. 21, p. 28 (quoting doc. 9-13, p. 4) (citations omitted).)   In other words, the Magistrate Judge accepted as not unreasonable the state court's exclusion of a licensed attorney from the definition

of "pro se" as understood in the above excerpt.   Petitioner "questions" whether the Magistrate Judge's adoption of the state habeas court's interpretation of Faretta was a "reasonable and proper analysis."   (Doc. 22, p. 13.)   He argues that, while under federal law, there is no constitutional right to hybrid representation, Georgia law does allow hybrid representation for licensed attorneys. He claims, however, that nothing in the Georgia law "notes that licensed attorneys are not to be warned about their constitutional right to counsel, the loss of their appellate rights or any abrogation of Faretta or Strickland."   (Id., pp. 14-19.)   By arguing the lack of fairness inherent to the Georgia law at issue, Petitioner here misses the mark.   Indeed, the fairness of Georgia's definition of "pro se" is not in question on this ineffective assistance claim.   As to his ineffective assistance claim, Petitioner argued that his appellate counsel's failure to raise Faretta was "not the result of a tactical or strategic decision," and thus, according to Petitioner, there was deficient performance per se.   (Doc. 1, p. 37.)   The Magistrate Judge found Petitioner's argument about the lack of intentionality of his appellate counsel's omission insufficient to establish that the state habeas court's deficient performance analysis was unreasonable.   (See doc. 21, p. 31.) Therefore, Petitioner's ineffective assistance claim failed on the first prong.   A de novo review of the record and a review of Petitioner's Objection requires the Court to adopt the Magistrate Judge's reasoning in denying this claim.

As to the Faretta issue itself, (which necessarily goes to whether Petitioner was prejudiced by the omission, the second Strickland prong), the Court agrees with the state habeas court and the Magistrate Judge.   Implicit in both state courts' decisions was a determination that Petitioner never waived his right to counsel because he was counsel.   By holding that he never waived counsel, the state courts determined he was not entitled to a Faretta hearing.   This Court finds the determination not an unreasonable application of law; just because Faretta never contemplated or

spoke to the possibility of attorney self-representation or defined whether such a person is proceeding "pro se" under its parameters, does not mean the state habeas court's reasoning, when it interpreted Faretta to not include self-represented attorneys, was an unreasonable application of law.

The Court finds Petitioner is not entitled to relief for alternative reasons, as well. His Claim fails because even accepting his argument that he waived counsel, he still cannot show prejudice. In fact, though "[t]he ideal method of assuring a voluntary waiver is for the trial judge to conduct a pretrial hearing at which the defendant would be informed of the charges, basic trial procedures, and the hazards of self-representation," Strozier v. Newsome, 926 F.2d 1100, 1104 (11th Cir.1991), a pretrial hearing is not required. United States v. Cash, 47 F.3d 1083, 1088 (11th Cir.1995). "The [Faretta] hearing . . . is a means to the end, namely ensuring a voluntary and intelligent waiver." Strozier v. Newsome, 871 F.2d 995, 998 (11th Cir. 1989). The failure to hold a Faretta hearing "is not error as a matter of law. If the trial record shows that a defendant knowingly and voluntarily elected to represent himself, the Faretta standard will be satisfied." Nelson v. Alabama, 292 F.3d 1291, 1295 (11th Cir. 2002). "As long as the record establishes that the defendant understood the risks of self-representation and freely chose to face them, the waiver may be valid." Strozier, 926 F.2d at 1105. "The ultimate test is not the trial court's express advice, but rather the defendant's understanding." Fitzpatrick v. Wainwright, 800 F.2d 1057, 1065 (11th Cir. 1986).

In Fitzpatrick, the Court considered factors in determining whether a petitioner's decision to represent himself at trial was knowing and voluntary, despite the trial court's failure to hold a hearing to inform him of the disadvantages of self-representation. Fitzpatrick, 800 F.2d at 1065-68. Those factors included: (1) the defendant's age, educational background, and physical and

mental health; (2) the extent of the defendant's contact with lawyers before trial; (3) the defendant's knowledge of the nature of the charges, possible defenses, and penalties; (4) the defendant's understanding of rules of procedure, evidence, and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed, and the extent to which that counsel aided defendant; (7) mistreatment or coercion of the defendant; and (8) whether the defendant was trying to manipulate the events of the trial.   United States v. Stanley, 739 F.3d 633, 645-646 (11th Cir. 2014) (citing Fitzpatrick, 800 F.2d at 1065-1068). Almost all of these factors weigh against Petitioner's arguments that his constitutional rights were violated, even if he waived his right to counsel.   He was a lawyer who, by his own admission, practiced "misdemeanor [criminal] State court defense, some debt defense work, small probate cases, and simple and infrequently contested divorce and family matters."   (Doc. 1, p. 35.) Though Petitioner's experience may not have included felony criminal defense, Petitioner admits to—and crows about how—he himself drafted the successful "pretrial demurrer granted by Judge Bass" because he did not like the management of his case.   (Doc. 22, p. 26.)   Petitioner never explains why he did not resolve the insufficiencies he seeks to pursue here himself, but the record shows he indeed acted as co-counsel in representing himself.   As well, though he did not have standby counsel, he did have co-counsel, and Petitioner had extensive contact with his original counsel before trial.   Therefore, if he did waive his right to counsel (as he has argued), Petitioner, as a practicing attorney who had experience in criminal defense, cannot show that the state court would have considered his waiver unknowing and involuntary.   Thus, he cannot show he was prejudiced by the appellate court's preclusion of his claims despite the lack of Faretta hearing even if he waived his right to counsel.   It is conceivable, if not probable, that the Faretta issue would have been moot, given the Fitzpatrick factors.

13

Finally, Petitioner's attempts to analogize his case to <u>Harding v. Davis</u>, where the petitioner never waived his right to counsel, but sought different counsel while his own counsel was "silent," fails.  878 F.2d 1341 (11th Cir. 1989).   In <u>Harding</u>, there was no dispute over whether Harding was <u>pro se</u>, and, in any event, both prongs of <u>Strickland</u> were satisfied.   On the facts here, the Court cannot hold the state habeas court's review constituted an unreasonable application <u>Strickland</u> as its review of the performance prong was sound.   Moreover, the state courts' preclusion of this Claim was not an unreasonable application of <u>Faretta</u>.   But also, the Court finds that even reviewing the merits of Petitioner's underlying argument, it fails because he would never have been able to show <u>Strickland</u> prejudice since he could never have shown that if his attorney had argued <u>Faretta</u>, relief would have been mandated.   Petitioner's Claim 1 is denied.

Petitioner's Claim 2 argues that trial counsel was ineffective for failing to move for a "Providential Cause" Continuance and that appellate counsel was ineffective for failing to appeal that omission.  (Doc. 1, pp. 40-43.)   The "providential cause" statute referenced by the Petitioner provides that:

> [t]he illness or absence, from providential cause, of counsel where there is but one, or of the leading counsel where there are more than one, shall be a sufficient ground for continuance, provided that the party making the application will swear that he cannot go safely to trial without the services of the absent counsel, that he expects his services at the next term, and that the application is not made for delay only.

O.C.G.A. § 17-8-24.   Petitioner claims, although Schiavone asked for a continuance, he "apparently never invoked this statutory section in his request and never filed a written motion for continuance."  (Doc. 1, p. 40.)   The Magistrate Judge found that the state habeas court's holding regarding this issue was not unreasonable.  (Doc. 21, p. 34 (citing doc. 9-13, p. 7).)   The state habeas court noted that Schiavone had been active counsel on Petitioner's case for five months at the time of the request for continuance in June 2012, and over two months since Petitioner's first

attorney's death.   (Doc. 9-13, p. 7.)   Therefore, it found that Petitioner had not shown ineffective assistance in Claim 2 because he had shown no abuse of discretion by the trial court which could have been disturbed on appeal, even had the motion been predicated on providential cause.   (Id.) The Magistrate Judge agreed with the state habeas court and attributed deference to its decision under AEDPA.   (Doc. 21, p. 35); 28 U.S.C. § 2254(d)(1).

   The Magistrate Judge also found that, according to the record, appellate counsel did attempt to argue ineffective assistance of counsel, but the Georgia Court of Appeals prohibited ineffective assistance claims given Petitioner's self-representation.   Therefore, Petitioner could not show that his appellate counsel was ineffective because he cannot show he was prejudiced; this Claim would have never been successful on appeal because it was effectively categorically denied.   Therefore, his Claim against his appellate counsel, on this basis, failed.   (Doc. 21 p. 33.)   Petitioner's Objection claims that he found a Georgia case from "more than 100 years ago," wherein "Georgia" applied the statute where the attorney had not died but was ill and unavailable.   (Doc. 22, pp. 25-26.)   He does not cite the case, but he claims, "[s]ince death is more severe and irreversible than illness it seems that the statute would apply."   (Id., p. 25.)   Petitioner claims that he was placed in an impossible situation, having to choose between Schiavone, who he believed was ineffective, and who "would have been ineffective no matter what amount of time the court would grant," and no representation at all.   (Id., p. 25-26.)   He claims "[a] violation of state statute may rise to the level of a constitutional violation of a fair trial, a due process violation, right to effective assistance of counsel and 6th and 14th Amendment violations," and assumes the referenced statute offered him some "statutorial [sic] standard of protection" which he could not enjoy.   (Id. pp. 26-27; 29.) He complains about the money he paid for his representation, discrepancies in the record, the trial court's denial of bond, and the person who he believes is responsible for his financial difficulties.

(Id. pp. 27-28.)   But he never responds to the Magistrate Judge's finding regarding the speculative nature of Petitioner's argument that the trial judge would have granted the continuance had it been urged on the providential cause basis.   (See doc. 21, p. 34-35.)   Petitioner has therefore not shown he was prejudiced by his attorney's failure to assert the defense.   He does not even acknowledge the Magistrate Judge's considerations regarding appellate counsel.   The undersigned agrees with the Magistrate Judge; given how much time had passed with Schiavone as lead counsel, the motion would not likely have been granted, and Petitioner's claims against appellate counsel are fatally flawed.   Since Petitioner has offered no other basis for relief, the Court denies relief to him on Claim 2.

Petitioner argued in Claim 3 that his trial counsel was ineffective because he failed to call Amy Morton, who had been engaged to opine that it would be unlikely for a child who was abused to show affection to her abuser in the way that the victim here did.   (Doc. 1, pp. 43-48.)   Again, the Magistrate Judge afforded deference to the state habeas court on this claim.   (Doc. 21, p. 38).   Petitioner's primary argument about the reasonableness of the state habeas court decision was that the state habeas court failed to analyze Strickland correctly.   According to Petitioner, the state habeas court evaluated the Claim based on whether there was sufficient evidence to convict Petitioner, failing to measure the "strength of the omitted evidence, its importance in the context of the trial, or the strength of the totality of the evidence."   (Doc. 1, p. 47.)   The Magistrate Judge found the Petitioner had not met his burden to show that Schiavone's omission of Morton constituted deficient performance.   (Doc. 21, pp. 37-38 (citing White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992) ("The [Strickland] test has nothing to do with what the best lawyers would have done.   Nor is the test even what most good lawyers would have done.").)   The Magistrate Judge noted that subjective choices are not at issue under Strickland and thus

Petitioner's argument that Schiavone did not make an intentional decision to forgo the expert was insufficient.  (Id., p. 38 (citing Chandler v. United States, 218 F.3d 1305, 1315 & n. 16 (11th Cir. 2000)).)  The Magistrate Judge also found the state habeas court's holding implicitly relied on Strickland to find Petitioner could not show prejudice.  He noted, "[f]inding that there was sufficient evidence to explain the questions raised by petitioner via Dr. Aldridge is probative to whether he had shown prejudice."  (Id., p. 37.)

Petitioner's Objection first challenges the Magistrate Judge's rephrasing of this Claim for relief in a more succinct statement.  He then disputes the Magistrate Judge's conclusion that the Strickland standard was implicit in the state habeas court's reasoning that, because there was sufficient evidence to explain the questions raised by the state habeas expert, Petitioner failed to show he was prejudiced by his counsel's alleged ineffectiveness.  (See doc. 22, pp. 31, 36-37.) His argument about that analysis states, "the state habeas court's conclusion that petitioner did not meet the prejudice threshold because there was sufficient evidence to sustain the conviction is not only the wrong standard under Strickland but also an unreasonable determination of the facts and the law . . . ."  (Id., pp. 36-37.)  He next argues that, where sex crime cases are involved, counsel is generally ineffective when he fails to coordinate with a psychological or medical expert.  (Id., p. 32.)  He claims that the Court has before it a direct comparison of reasonable versus unreasonable attorney's actions, in that his first attorney engaged an expert while Schiavone was oblivious to its need.  (Id.)  He argues it was reasonable to hire an expert, (id., p. 32), and attempts to refute the Magistrate Judge's conclusions about the subjective choices of trial counsel being irrelevant, (id., p. 34).  He asserts that prejudice was "proven" when another expert testified at the state habeas court hearing because she agreed with the first expert's conclusions.  (Id., p. 36.)

First, just because one avenue would have been reasonable (see id., p. 32 ("It was reasonable for [Jackson] to consult with his client, Madison about the need for an expert . . . .), does not mean an alternative avenue is unreasonable, as Petitioner repeatedly suggests.   Second, Petitioner never shows the state habeas court's application of law was unreasonable.   His argument regarding the state habeas court's application of the Strickland standard misstates the state habeas court's reasoning.   The state habeas court did not simply measure whether there was sufficient evidence to sustain the conviction in its Strickland analysis.   Instead, the state habeas court reasoned "[w]hen assessing whether a defendant was prejudiced by trial counsel's failure to present expert testimony, for purposes of ineffective assistance of counsel, the evidence that should have been, but was not presented, is measured against the totality of the evidence that was presented."   (Doc. 9-13, p. 7 (citing McNeil v. State, 871 S.E.2d 303 (2022).)   The state habeas court then considered "the strength of the allegedly omitted evidence, its importance in the context of trial, and relative strength of the totality of the evidence."   (Id.)   It ultimately found that the omitted testimony would not have outweighed the totality of the evidence presented, and therefore, Petitioner was not prejudiced by his attorney's failure to call the witness.   (Id., p. 8.)   Though Petitioner disagrees with the state habeas court's conclusion about the sufficiency of the evidence presented at his trial, there is no unreasonable application of law in this analysis.   Thus, this Court must defer to the state habeas court's conclusion, as the Magistrate Jude recommended.   Claim 3 is, therefore, denied.

## II.    Petitioner's Ineffective Assistance Claims 4-9

Petitioner's next several claims were first brought in his state habeas petition but were omitted from his direct appeal.   He alleges trial counsel was ineffective for failing to: investigate relevant witnesses (Claim 4); invoke the marital privilege (Claim 5); object to unredacted portions of the

recorded phone calls between the victim and the Petitioner (Claim 6); object to the audio recording between the victim and her mother (Claim 7); properly cross examine the victim (Claim 8); and object to the testimony of Alfonso Habersham and in his cross-examination of Habersham. (Doc. 1, pp. 48-55.)   The state habeas court held the claims could not proceed for similar reasons as Claim 1.   (Doc. 9-13, pp. 8-9.)   The state habeas court found that, given the Georgia Court of Appeals' limitation on his ineffective assistance claims due to his self-representation, it likewise could not consider any of Petitioner's claims against trial counsel because those claims would never have been allowed to proceed on direct appeal.   It found there was no basis for relief on those claims.   (Id.)

The Magistrate Judge found that, while Petitioner was legally barred from asserting his ineffective assistance claims at state habeas, he was not procedurally barred in the usual sense. (Doc. 21, p. 40.)   Instead of finding procedural default at this stage, which the Respondent had argued, the Magistrate Judge found the state habeas court relied on its interpretation of several Georgia common law rules which did not implicate federal law.   The first one, established in Seagraves v. State, 376 S.E.2d 670 (Ga. 1989), allows individuals to assert their right as an attorney to act as co-counsel.   The second rule, found in Mullins v. Lavoie, 290 S.E.2d 472 (Ga. 1982), prohibits criminal defendants such as Petitioner who act "either solely or in conjunction with representation or assistance by an attorney [from asserting] a claim of ineffective assistance of counsel with respect to any stage of the proceedings wherein he was counsel."   (Doc. 21, p. 41 (citing Doc. 9-13, p. 9).)   The state habeas court then determined that such a person is not considered "pro se" under Faretta.   (Id.)   As the Magistrate Judge explained, the state habeas court broadly interpreted the Georgia rules to mean that if *any* defendant retains any authority at all to act as his own counsel, then he is precluded from asserting an ineffectiveness claim against

his co-counsel.   (Id.)   The Magistrate Judge then noted that no Supreme Court decision had squarely addressed whether Georgia's practice of not considering a self-represented licensed attorney "pro se" is constitutional, and "[s]ince there is no 'clearly established federal law' on the issue, the state court's determination is not reviewable in this Court."   (Id., p. 42.)   Consequently, the Magistrate Judge found, there was no need to assess whether the state court applied controlling Supreme Court authority in an objectively unreasonable manner or contrary to law, since there was no Supreme Court authority involved in the rationale at issue (the state court's exclusion of self-representing attorneys from being considered "pro se").   (See id. (citing House v. Hatch, 527 F.3d 1010, 1018 (11th Cir. 2008) ("[O]nly if we answer affirmatively the threshold question as to the existence of clearly established federal law, may we ask whether the state court decision is either contrary to or an unreasonable application of such law."); Williams, 529 U.S. at 409).)

Petitioner's response finds fault in the Magistrate Judge's attempt to analogize this case with others while also taking a literal definition of "pro se" from Faretta.   (Doc. 22, pp. 37-38 ("It is, at best, inconsistent to argue that pro se representation can be interpreted literally as the state habeas court has done, per this 'order' (p.28) to deny relief, and then in this section analogize this set of facts to the pro se/standby counsel scenario.").)   Specifically, Petitioner objects that the Magistrate Judge had analyzed Petitioner's Claim 1 by finding that the state habeas court's interpretation of Faretta, which was that, while warnings should be given when a defendant seeks to "proceed pro se," attorneys who act as co-counsel in their own defense are not "pro se" as understood by Faretta, was not unreasonable.   (Doc. 22, p. 28.)   On the other hand, in his review of Claims 4-9, the Magistrate Judge analogized other case law which held that pro se defendants who had standby counsel at trial could not pursue ineffective assistance on appeal.   The Magistrate Judge concluded that the state habeas court's holding limiting Petitioner's ineffective

assistance claims was not directly contrary to federal and constitutional law based on these analogies.   (See id., pp. 38-44.)   Then, Petitioner mischaracterizes the Magistrate Judge's finding on whether the federal court may intervene in the state court's laws.   He states, "[t]he claim by this Court is that somehow Seagraves and Mullins establish a conflict, that is establish Georgia law that is in conflict with U.S. Supreme Court precedent or the U.S. Constitution, and this Petitioner should have argued that as an issue."   (Id., p. 39.)   He argues, "[b]y Georgia not specifying its position on whether or not co-counsel attorneys are to be warned or not under Faretta does not make it a ruling by the absences of a ruling."   (Id., p. 41.)   Petitioner then complains that a "double whammy" was imposed against him while alluding to the "friction that the then attorney/defendant should have known better."   (Doc. 22, pp. 43-44.)   He asks, "from where was he supposed to have garnered this superior knowledge from?"[2]   (Id., p. 44.)

To be clear, the Magistrate Judge did not find that Seagraves and Mullins establish a conflict with federal law, including Faretta, as suggested by Petitioner.   Quite the opposite is true. However, the Magistrate Judge instead held that this is simply not an issue for which Petitioner may find § 2254 relief because it does not implicate federal law in the manner required for habeas relief.   (Doc. 21, pp. 27, 40 (citing Madison v. State, 766 S.E.2d 206, 216 (Ga. Ct. App. 2014)). By way of procedural review, the state rules at issue precluded the appellate court from reviewing any ineffective assistance claims on appeal.   According to the Georgia Court of Appeals and, eventually, the state habeas court's interpretation of the appellate court, Petitioner never relinquished his right to counsel because he was counsel, and there was no need for a Faretta hearing.   Though Petitioner might have argued on direct appeal to the Georgia Supreme Court

---

[2]  Perhaps the state court assumes that attorneys glean superior knowledge of the perils of self-representation from their education or from their expertise.   Such an assumption would not be unsound. Fitzpatrick, 800 F.2d at 1065 ("The ultimate test is not the trial court's express advice, but rather the defendant's understanding.") (citations omitted).

that its rule excluding attorneys from being considered "pro se" was unconstitutional, he did not present it there.    Again, after his case was remanded and he was resentenced, rather than appeal the preclusion or the lack of Faretta warning further, Petitioner sought state habeas relief, bringing only his ineffective assistance claims.    Petitioner's claim at state habeas that his appellate attorney was ineffective for failing to raise Faretta failed because the state considered him to not have been pro se at trial.    Then the state habeas court found that, as a matter of Georgia law, as described by the Georgia Court of Appeals, his ineffective assistance claims which were omitted from his direct appeal would not have been heard regardless of their default, and thus there was no basis for relief on those claims.  (Doc. 9-13, p. 9.)    Then his Certificate of Probable Cause ("CPC") from his state habeas was denied—which is sensible given the much higher burden a petitioner faces on collateral appeal even in the state courts, but he also did not pursue this claim to the United States Supreme Court either—whether via direct appeal or after the CPC was denied.    He has never argued trial court error on the underlying Faretta argument.

    In his R&R, the Magistrate Judge found that the state's rule that self-represented attorneys are not considered "pro se" has never been addressed, much less controverted by the Supreme Court, and therefore found that the question is strictly a state law issue for which the federal court does not intervene, especially on § 2254 review of an ineffective assistance claim.    (See doc. 21, pp. 44.)    Petitioner has not asserted in Claims 4-9 or elsewhere that the Georgia law itself is unconstitutional or any due process implications resulting from the enforcement of that law as an independent claim, and if he did now, it would likely be procedurally defaulted because he has never brought that claim.    Indeed, the only issue before the Court in Claims 4-9 is whether Petitioner's trial counsel was ineffective.    This Court may not consider those claims given the state's preclusion of them based on state law, i.e., its own definition of "pro se."    Given the

Supreme Court has not established a legal principle that "clearly extend[s]" to the conduct at issue, Petitioner's claims are denied.  Cf. Wright v. Van Patten, 552 U.S. 120, 123 (2008).

That said, even when the Court construes the Claim as one that implicates federal law, it fails.  This Court already found that it was not an unreasonable application of federal law to hold that Petitioner's claims were precluded by the state's definition of "pro se."  In doing so, the Court also found the state habeas court's reliance on the Georgia rule defining self-represented attorneys as not "pro se," for purposes of Faretta, was not an unreasonable application of Faretta.  Faretta never speaks to whether self-represented attorneys are "pro se," and therefore whether, as an attorney, Petitioner waived his right to counsel.  With no contradictory relevant precedent, Petitioner's argument that the state habeas court's preclusion of Claims 4-9 was unreasonable because of Faretta fails.  Second, even if Petitioner did waive his right to counsel, that waiver may have been construed as a knowing one, given his background.  Thus, he could never prove prejudice even if his argument that he waived counsel were successful.  Accordingly, Petitioner's Claims 4-9 fail.

III.    Claim 10: Trial Court Error, Due Process

In Claim 10, Petitioner alleged trial court error, titling his accusation as "Materially False Testimony/Evidence, 14th Amendment Due Process and Fair Trial Violations, & Prosecutorial Misconduct."  (Doc. 1 at 56.)  Petitioner made several accusations against the prosecution team, including that the prosecution "induced, fostered, and planted" perjury by leveraging a jailhouse witness informant's sentence to gain his testimony.  (Id., p. 57.)  He next claimed that A.D.A. Thomas instructed a witness to "blurt out" the existence of recordings made by the victim which had been suppressed in retaliation for losing their appeal on the suppression of the recordings. (Id.)  He then claimed that the transcript of the initial interview between the informant and the

state was intentionally kept from him, which "further establishes bad faith and due process violations engendered to deny [him] a fair trial.   (Id.)   The Magistrate Judge found that Petitioner did not exhaust this claim.   He also found that because Petitioner had failed to exhaust his Claim by failing to fairly present it to the state courts and the state court remedy was no longer available, the failure constituted a state procedural bar which presently creates a procedural default.  (Doc. 21, p. 48 (citing Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991) (citations omitted) ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would  now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas.").) The Magistrate Judge also noted that the state's procedural rules were adequate and independent and thus the Court was precluded from reviewing them.  (Id., p. 49.)   He likewise denied Petitioner's request for an evidentiary hearing.   (Id.)

Petitioner's Objection reasserts his Claim and his "request for counsel and/or investigative resources to establish his need for an evidentiary hearing," but does not otherwise respond to the Magistrate Judge's procedural default finding.  (Doc. 22, pp. 48-51.)   He claims, "attorney assistance or investigative assistance could, and likely would, enable Petitioner to establish his actual innocence against such an extremely weak evidentiary factual scenario."   (Id., p. 51.) Petitioner offers no legal justification for his request, aside for analogizing his case to In re Davis, 557 U.S. 952 (2009).   However, Davis, a capital case, involved seven witnesses who had recanted their testimony.   Id. at 953 (Stevens, J. concurring).   Petitioner's case involves no recantations, and his accusations against the prosecution are wholly speculative.   Davis and Petitioner's case are not analogous, and Petitioner has failed to even argue cause and prejudice to excuse the procedural default of this dubious Claim.   Claim 10 is, therefore, denied.

IV.    <u>Petitioner's Claim 11: Trial Court Error, Jury Instructions</u>

In Claim 11, Petitioner sought to rehash the faulty jury instructions which led to the reversal of two counts against him.  (Doc. 1, pp. 59-64.)   He argued that the erroneous jury instruction which "misstated" the law not only tainted his reversed convictions, but his remaining child molestation conviction as well.   Petitioner's remaining Claims were too vague for the Magistrate Judge to parse.   Thus, the Magistrate Judge recommended that to the extent Petitioner merely disagreed with the Georgia Court of Appeals' holding by arguing the erroneous jury instruction not only tainted his now reversed convictions but also his child molestation conviction, he should have appealed that decision, and if certiorari was denied, he should have sought state habeas relief on the Claim when he brought his state habeas petition.  (Doc. 21, p. 53.)   On the other hand, to the extent Petitioner believed that the sentence he ultimately received (and pursuant to which he is now confined) was erroneous for any reason, including the jury instructions' impact on his sentence, he should have appealed the trial court's resentencing judgment or sought amendment to add it to the state habeas court petition if allowed by the state procedure upon the finality of his resentencing.  (<u>Id.</u>)   Then, the Magistrate Judge found that, "[a]s far as this Court can discern from the record, Petitioner has never sought post judgment, appellate, or collateral relief on the judgment serving as the basis for his Claim 11 in the state court system."  (<u>Id.</u>)   The Magistrate Judge found that the Claim is therefore unexhausted and procedurally defaulted.   (<u>Id.</u>)

Petitioner's Objection claims that he asked his counsel to appeal both decisions but both attorneys failed to do so.   (Doc. 22, p. 61.)   Thus, Petitioner argues the Court should afford cause and prejudice to excuse the default of these Claims.   (<u>Id.</u>, p. 62.)   As to cause, Petitioner attached as an exhibit to his Objection a letter from his habeas attorney Tom Withers which he argues proves Withers' omission, as it "notes [Withers] must be retained to act to protect his client's

appellate rights." (Id.)   Petitioner also references an order which shows that Withers represented him for his resentencing hearing.   (Id., p. 66.)   Petitioner never brings his point home, however. Neither document shows that he asked his attorneys to appeal the resentencing order or that their refusal caused him to forfeit the Claim.   In any event, there is no automatic constitutional right to habeas counsel.   See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); United States v. Webb, 565 F.3d 789, 794 (11th Cir. 2009) (citing Barbour v. Haley, 471 F.3d 1222, 1227 (11th Cir. 2006)); Hooks v. Wainwright, 775 F.2d 1433, 1438 (11th Cir. 1985).   Therefore, Petitioner's habeas attorney had no constitutional requirement to pursue an appeal on his behalf in the manner he might have been required to do on direct appeal from his trial.   Habeas counsel's refusal to be retained to do so does not render his assistance ineffective.   Therefore, any Martinez/Trevino argument Petitioner seeks to make by presenting these exhibits fails.[3]   It also fails to constitute cause to excuse the default of this vague trial court error Claim.

Petitioner also does not make a discernable prejudice argument.   In response to the Magistrate Judge's observation regarding the vagueness of his Claim, instead of stating his argument in a sufficiently coherent manner, Petitioner claims he "empathizes" with the Court's inability to decipher his pleadings.   (Id., p. 63)   He notes:

> It has remained a quandry [sic] to this Defendant/Petitioner how an erudite and educated Georgia Court of Appeals could have come to the decision they came to in finding an errant and prejudicial jury instruction not prejudicial and harmful to the sole remaining weakest, previously no billed, charge in the indictment."

(Id.)   Petitioner's sarcasm does him no favors.   The Court is still unable to decipher his point in this Claim.   It is consequently insufficiently pled under Rule 2(c) of the Rules Governing § 2254

---

[3]   Trevino v. Thaler, 569 U.S. 413 (2013) expanded a preexisting exception established by the Supreme Court in Martinez v. Ryan, 566 U.S. 1 (2012).   Those cases allow a petitioner to rely on errors made by their state collateral counsel to establish cause to excuse procedural default of an ineffective trial counsel claim when certain circumstances are met.

cases, and he has had notice and ample opportunity to correct the deficiency.   In any event, he has

not overcome his burden to show that his default of this Claim should be excused.   Even if his

vague and conclusory arguments about his attorneys failing to appeal constituted cause for failing

to pursue them (and therefore exhaust this Claim), he has not established that he was prejudiced

by the omission since he has not shown or even argued the appeals would have been successful

except to say he believes the remaining charges were weak in the first place.   The Court agrees

that Petitioner's Claim 11 fails.

V.      Claim 12: Cumulative Error

Petitioner's next Claim alleged cumulative error.   (Doc. 1, pp. 64-67.)   He argues that the

erroneous jury instruction, combined with the ineffective assistance of counsel, which the state

habeas court failed to properly examine, "requires and truly commands relief and a new trial"

under the Georgia Supreme Court's holding in State v. Lane, 838 S.E.2d 808 (Ga. 2020).   (Id.)

Respondent argued that Petitioner's Claim was defaulted under Georgia's successive petition rule,

or alternatively, fails to state a claim for relief because Petitioner did not allege a violation of a

federal constitutional right.   (See doc. 21, p. 56 (citing doc. 8-1, p. 28).)   The Magistrate Judge

concluded that, even if Petitioner's claim were cognizable and was not defaulted, it failed because

Petitioner had articulated no errors—constitutional or otherwise—which to accumulate.   (Id.)

He also determined that Petitioner's reliance on state law to conclude a cumulative error Claim is

viable did not warrant federal relief.   (Id., p. 58.)

Petitioner's Objection claims that the Court misconstrued and altered his claim.   (Doc. 22,

p. 67.)   He asserts he intended to argue that the "'double deference' should not apply to this case"

because the state habeas court's decision did not consider the state law change in accepting

cumulative error as a theory of relief, as established by State v. Lane, 838 S.E. 2d at 815 ("We

therefore overrule our prior decisions and those of the Court of Appeals that hold that the prejudicial effect of multiple trial court errors may not be considered cumulatively in determining whether a criminal defendant is entitled to a new trial, and disapprove any decisions with language to that effect).   (See doc. 22, p. 70.)   He then argues that the Magistrate Judge's observation that it is unclear whether a cumulative error Claim is cognizable in the Eleventh Circuit should indicate to the Court that his Claim 12 warrants a certificate of appealability.   (Id., p. 71.)

To the extent the Magistrate Judge's review of this Claim, which considered his attack as an independent ground under § 2254, not as a criticism of the deference due to the state habeas court on Petitioner's other Claims, misconstrued Petitioner's argument, the error was harmless. In fact, given Petitioner's remaining arguments, it is clear that Petitioner indeed seeks to pursue relief based on the cumulative impact of the supposed errors.   If Petitioner sought to degrade the deference attributed to the state habeas court on his ineffective assistance claims, his argument fails.   In State v. Lane, the Georgia Supreme Court considered a direct appeal after the trial court had granted Lane a new trial based on "a host of grounds, including evidentiary errors and ineffective assistance of counsel."   Lane, 838 S.E. 2d at 810.   The Georgia Supreme Court "agree[d] that trial counsel [] was deficient in at least two distinct respects, and that the trial court committed at least one evidentiary error[,]" and therefore considered cumulative impact of those errors on direct appeal.   Id. at 813.   It did not make a cumulative error argument available on collateral appeal.   Therefore, Petitioner's argument that the state habeas court failed to apply state law in not granting him relief on the cumulative impact of all supposed errors fails.   It also fails because, unlike in State v. Lane, Petitioner did not show he suffered harm via ineffective assistance or trial court error, i.e., he did not show multiple errors which could be accumulated. Additionally, unlike the movant in State v. Lane, Petitioner did not argue cumulative error in any

state proceeding.   His present argument is the first time he has asserted the cumulative impact of multiple errors.   Therefore, the state habeas court could not have been erroneous not considering an argument he did not present.[4]

His deference argument is meritless anyway because the state habeas court's failure to apply state law would not degrade the deference due to its holding.   Pursuant to 28 U.S.C. § 2254, a federal court shall not grant habeas relief on any claim "adjudicated on the merits" in state court unless the state court's decision denying relief was either "contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(1)-(2) (emphasis added).   Despite Petitioner's suggestion, the U.S. Supreme Court has not mandated that cumulative impact be a cognizable collateral claim, and thus, the state's alleged preclusion of that Claim (which was not even argued) cannot run afoul of Supreme Court precedent.   The State's application of its own law is not the purview of the habeas Court when it does not contradict constitutional law.

VI.    COA is Denied

Federal Rule of Appellate Procedure 22(b)(1) states in part:

> In a habeas corpus proceeding in which the detention complained of arises from process issued by a state court,  . . . the applicant cannot take an appeal unless a circuit justice or a circuit of district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."

---

[4]   Petitioner instead argued "[i]f a petitioner establishes multiple errors by counsel, the Court views the prejudice from those errors cumulatively, not in a vacuum."  (Doc. 9-5, p. 20.)   Indeed, he sought to show how, as in Darst v. State, 746 S.E.2d 865 (Ga. Ct. App. 2013), the errors made by trial counsel cumulatively prejudiced him.  (Id., pp. 34, 39.)   Consideration of the cumulative impact of trial counsel errors within the analysis of an ineffective assistance claim is distinct from the type of cumulative error claim made allowable in State v. Lane.

Pursuant to 28 U.S.C. § 2253(c)(2), a district judge should issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." The United States Supreme Court has stated that "[t]he COA inquiry . . . is not coextensive with a merits analysis." <u>Buck v. Davis</u>, 580 U.S. 100, 115 (2017). Rather, "[a]t the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" <u>Id.</u> (quoting <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003)). Petitioner has failed to make a substantial showing of the denial of a constitutional right with respect to any of his Claims. The Court finds no jurists could disagree with the Court's conclusions on the issues presented in any of the Claims Petitioner raised. Accordingly, no COA shall issue as to any of his Claims.

**CONCLUSION**

Petitioner's Objections are **OVERRULED**, (docs. 22 & 23), and the Court **ADOPTS** the R&R, (doc. 21). The Petition for Writ of Habeas Corpus, (doc. 1), is **DENIED**. The Court **DENIES** COA. The Clerk is **DIRECTED** to close this case.

**SO ORDERED**, this 27th day of June, 2025.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA